STATE of Minnesota, Petitioner,

v.

**Joseph Chan MOON, Respondent.**

**No. CX–89–1734.**

Supreme Court of Minnesota.

Nov. 30, 1990.

---

Lori Mittag, Sp. Asst. Atty. Gen., St. Paul, for petitioner.

Robert M. Wallner, Bemidji, for respondent.

KEITH, Justice.

Respondent, Joseph Chan Moon, was convicted of felony theft for filing false Medicaid claims. The district court imposed a firearms restriction pursuant to Minn.Stat. § 609.165, subd. 1a (1990), when it discharged Moon from probation and restored his civil rights. The trial court rejected Moon's claim that application of section 609.165, subdivision 1a, in this case constituted an unconstitutional ex post facto law. The court of appeals, hearing the case on discretionary review, directed the parties to address the issue whether section 609.165, subdivision 1a, applied to Moon in light of Minn.Stat. § 609.13, subd. 1(2) (1990). The court of appeals held that the trial court erred in imposing the firearms restriction because Moon's conviction was deemed to be for a misdemeanor and misdemeanor theft does not constitute a crime of violence under Minn.Stat. §§ 609.-165, subd. 1a, 624.712, subd. 5 (1990). *State v. Moon*, 455 N.W.2d 509 (Minn.App. 1990). A majority of the court of appeals panel did not address whether application of Minn.Stat. § 609.165, subd. 1a (1990), would have violated the constitutional prohibitions against ex post facto laws. *Id.* We accepted the state's petition for further review.

I

Moon had been charged with theft of approximately $7,500 in Medicaid funds from 1984 until 1986 by billing Medicaid for name brand drugs when he actually dispensed generic drugs, by billing quantities in excess of those actually dispensed, and by billing more refills than actually dispensed. On December 21, 1987, Moon entered a guilty plea to felony theft, but questioned the amount of stolen funds. The court ordered Moon to pay restitution of $5,770.75 and costs of prosecution, and

placed Moon on probation for a period not to exceed 5 years.

On February 21, 1989, the trial court discharged Moon from probation. The discharge order deemed Moon's offense to be for a misdemeanor under Minn.Stat. § 609.13 (1990), and included the following firearms restriction:

> You are not entitled to ship, transport, possess or receive a firearm until 10 years have elapsed since you have been restored to civil rights and during that time you are not to have been convicted of any other crime of violence.

Minn.Stat. § 609.165 (1990), which provides for the restoration of civil rights following a conviction for a crime, mandates a firearms restriction for a period of ten years following the restoration of civil rights for those persons convicted of crimes of violence:

> The order of discharge must provide that a person who has been convicted of a crime of violence, as defined in section 624.712, subdivision 5, is not entitled to ship, transport, possess, or receive a firearm until ten years have elapsed since the person was restored to civil rights and during that time the person was not convicted of any other crime of violence.

Minn.Stat. § 609.165, subd. 1a (1990).

Crime of violence is then defined to include felony theft. Minn.Stat. § 624.712, subd. 5 (1990).

The enactment of section 609.165, subdivision 1a, in 1987 was a response to federal legislation which Congress enacted in 1986. Prior to 1986, federal law prohibited any person who had been convicted of "a crime punishable by imprisonment for a term exceeding one year" from receiving, possessing, or transporting any firearms in or affecting commerce. 18 U.S.C. § 1202 App. (1982 & Supp. II 1985) (repealed by the Firearms Owners' Protection Act of 1986,

Pub.L. No. 99–308, § 104(b), 100 Stat. 459). The 1986 federal legislation required that, in order to include within the federal firearms prohibition a person who has been restored to civil rights, the order restoring the individual to civil rights must contain a firearms restriction.[1]

In Minnesota, upon the expiration of a person's sentence or by order of the court following a stay of imposition or execution of sentence, a person convicted of a crime is automatically restored to civil rights. *See* Minn.Stat. § 609.165 (1990). Thus, after the 1986 federal legislation, federal law enforcement officials no longer could enforce the federal firearms restriction against persons convicted of felonies in Minnesota who had been restored to civil rights. In 1987, the Minnesota legislature addressed this issue by requiring that trial courts impose a 10–year firearms restriction in the discharge orders of persons who had been convicted of crimes of violence. *See United States v. Traxel,* 914 F.2d 119, 123 (8th Cir.1990) (stating that section 609.-165, subdivision 1a, is "precisely the sort of express limitation on the right to possess firearms which Congress contemplated").

## II

Initially, we must address whether section 609.165, subdivision 1a, applies to a person who has been convicted of felony theft if the conviction is subsequently deemed to be for a misdemeanor pursuant to section 609.13. The answer depends on whether the legislature intended to impose the firearms restriction based on the nature of the offense for which the individual was convicted or based on the subsequent treatment of the offender. Subdivision 1a imposes the firearms restriction on a "person who has been convicted of a crime of violence" which according to section 624.712, subdivision 5, "includes * * *

---

1. The 1986 legislation provides:

    What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a con-viction for purposes of this chapter, unless such pardon, expungement, or restoration to civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

    Firearms Owners' Protection Act of 1986, Pub.L. No. 99–308, § 101, 100 Stat. 450 (codified at 18 U.S.C. § 921(a)(20) (1988)).

felonious theft." Minn.Stat. §§ 609.165, subd. 1a, 624.712, subd. 5 (1990).

Section 609.165, subdivision 1a, is a measure designed to protect the public safety by keeping firearms out of the hands of convicted criminals who have committed crimes which, in the legislature's judgment, are indications of future dangerousness. A trial judge, exercising the sentencing discretion permitted under the guidelines, reasonably could conclude that a stay of imposition is appropriate for a particular defendant and that he or she should not be subject to the usual consequences of a felony conviction if he or she successfully completes probation. The legislature, however, reasonably concluded that, in order to protect the public safety, certain convicted criminals should be subject to the federal firearms prohibition even though their civil rights otherwise have been restored. In particular, the legislature mandated that persons convicted of felonious theft be subject to a 10–year firearms restriction upon restoration to civil rights.

Does the operation of section 609.13, which in this case deems Moon's felony theft conviction to be for a misdemeanor, affect the applicability of section 609.165, subdivision 1a? Section 609.13 provides that under certain circumstances a conviction for a felony offense is deemed to be for a misdemeanor:

> Notwithstanding a conviction is for a felony: * * * (2) The conviction is deemed to be for a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence.

Minn.Stat. § 609.13 (1990).

Section 609.13 reflects the legislature's intention "not to impose the consequences of a felony if the judge decides that the punishment to be imposed will be no more than that provided for misdemeanors or gross misdemeanors." Minn.Stat.Ann. § 609.13 advisory committee comment (West 1987). Section 609.165, subdivision 1a, however, does not impose the consequences of a felony, but rather imposes consequences based on an offender's commission of certain criminal acts, which the legislature believed to be an indication of a propensity to abuse firearms in the future.

The legislature defined a number of offenses as "crimes of violence:"

> "Crime of violence" includes murder in the first, second, and third degrees, manslaughter in the first and second degrees, aiding suicide, aiding attempted suicide, felony violations of assault in the first, second, third, and fourth degrees, use of drugs to injure or to facilitate crime, simple robbery, aggravated robbery, kidnapping, false imprisonment, criminal sexual conduct in the first, second, third, and fourth degrees, felonious theft, arson in the first and second degrees, riot, burglary in the first, second, third, and fourth degrees, reckless use of a gun or dangerous weapon, intentionally pointing a gun at or towards a human being, setting a spring gun, and unlawfully owning, possessing, or operating a machine gun, and an attempt to commit any of these offenses, as each of these offenses is defined in chapter 609. "Crime of violence" also includes felony violations of chapter 152.

Minn.Stat. § 624.712, subd. 5 (1990).

The legislature modified only three of these offenses with the words felony or felonious: felonious theft, felony assault violations, and felony violations of chapter 152 (felony drug violations). A person who commits an offense which is not described with the words felony or felonious in section 624.712, subdivision 5, clearly is subject to the firearms restriction even if the conviction is deemed to be a misdemeanor pursuant to section 609.13. For instance, if a person commits fourth degree burglary, he or she is subject to the firearms restriction even if the conviction is deemed to be a misdemeanor because the definition of the offense does not include the words felony or felonious, which arguably would invoke the operation of section 609.13.

We do not believe the legislature intended a different result for assault, theft, or drug offenses merely because it described the categories of assault, drug, and theft offenses which are subject to the firearms

prohibition with the terms felonious or felony. The legislature did not use the words felonious and felony in the description of the theft, assault, and drug violations to bring into play section 609.13, but rather as a means to define the elements of the crimes which subject the offender to the federal firearms prohibition.

Section 609.13 does not preclude the legislature from imposing consequences, as it did in this case to protect the safety of the public, based on an offender's commission of criminal acts which also constitute felonies. In enacting section 609.165, subdivision 1a, the legislature intended the nature of the offense rather than the subsequent treatment of the offender to be the basis for the imposition of the firearms restriction. We hold that the definitions of the offenses listed as crimes of violence in section 624.712, subdivision 5, relate to the elements of the offense for which the defendant was originally convicted rather than the disposition subsequently imposed by the trial judge. Thus because Moon was originally convicted of felony theft, the trial court correctly imposed the firearms restriction upon his discharge from probation.

### III

■ Because we hold that section 609.-165, subdivision 1a, applies to Moon, we must examine whether this application violates the federal constitutional prohibition against ex post facto laws. The United States Constitution states that "[n]o State shall * * * pass any * * * ex post facto Law * * *." U.S. Const. art. I, § 10.[2]

The United States Supreme Court has listed two elements as necessary to the existence of an ex post facto law: the law "must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). The framers of the Con-

stitution intended to give persons fair warning of the effect of legislative acts and to restrain arbitrary and potentially vindictive prosecution. *Id.* at 28–29, 101 S.Ct. at 964.

Moon had fair warning of the consequences of his criminal conduct and he was not disadvantaged by the legislation. Prior to 1986, federal legislation prohibited the possession of a firearm by any person convicted of a crime punishable by imprisonment for more than one year. *See supra* p. 519. This federal prohibition extended to those persons convicted of felony offenses, even if their convictions under Minnesota law were deemed to be misdemeanors by operation of section 609.13. *See United States v. Matter*, 818 F.2d 653, 654 (8th Cir.1987). At this time a state court did not have to include a restriction in the discharge order in order to allow federal officials to enforce the firearms prohibition against a felony offender who otherwise had been restored to civil rights.

Moon was convicted for criminal behavior which extended over a period from September 2, 1984 until November 10, 1986— before the federal firearms legislation went into effect. Firearms Owners' Protection Act of 1986, Pub.L. No. 99–308, § 110, 100 Stat. 460 (amendments effective 180 days after enactment which was May 19, 1986). Nevertheless, throughout the entire time Moon was stealing funds from the Medicaid program, he was on constructive notice that, if convicted for this criminal behavior, he would be subject to a permanent federal prohibition on the possession of a firearm.

Furthermore, section 609.165, subd. 1a, does not create a new crime or impose harsher punishment, it merely requires state courts to give notice to persons convicted of crimes of violence, as defined by the state legislature, that they will be subject to the federal firearms prohibition for

---

**2.** The Minnesota Constitution provides: "No * * * ex post facto law * * * shall be passed * * *." Minn. Const. art. I, § 11. In *State v. Ryan*, 13 Minn. (Gil. 343, 348) 379 (1868), we recognized that "the language of our state constitution is identical with that of the constitution of the United States" with regard to the ex post facto clauses. Because respondent does not argue that the Minnesota Constitution's ex post facto clause is more protective than the federal constitution we do not address that issue.

a period of ten years following restoration to civil rights. When viewed together the 1986 federal legislation and the 1987 Minnesota legislation actually provide greater procedural protections, restrict application of the federal prohibition to those who are convicted of crimes of violence, and limit the firearms prohibition to a period of 10 years. If anything, the legislation advantaged rather than disadvantaged Moon.

Reversed.