**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Richard R. GLASER, Defendant–Appellant.**

No. 93–1680.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 17, 1993.

Decided Jan. 26, 1994.

John W. Vaudreuil, Asst. U.S. Atty., Madison, WI (argued), for U.S.

Robert A. Christensen, Madison, WI (argued), for Richard R. Glaser.

Before PELL, CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

No one who has been convicted of a "crime punishable by imprisonment for a term exceeding one year" may possess a firearm. 18 U.S.C. § 922(g). For a three-time loser, the penalty is a minimum of 15 years without possibility of parole. 18 U.S.C. § 924(e)(1). Richard Glaser pleaded guilty to possessing a firearm despite previous convictions. The conditional plea reserved the right to contest on appeal the application of the 15–year minimum, which applies only to persons who have "three previous convictions ... for a violent felony or a serious drug offense." Glaser has been convicted of committing at least four burglaries in Minnesota, "violent felonies" under the definition *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), supplies for that term. But the convictions count toward the necessary three only if they satisfy 18 U.S.C. § 921(a)(20), which makes the identification of a "crime punishable by imprisonment for a term exceeding one year" depend on state law:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Minnesota routinely restores the civil rights of felons on the way out the jailhouse door. Glaser contends that he therefore lacks the three convictions necessary to support the 15–year penalty.

Some states automatically restore an ex-prisoner's civil rights after the passage of time but do not notify the prisoner of this. We concluded in *United States v. Erwin,* 902 F.2d 510 (7th Cir.1990), that such statutes erase the "conviction" for federal purposes only if state law fully restores the ex-prisoner's right to possess weapons: when the restoration of civil rights occurs entirely by virtue of the statute books, other enacted statutes constitute express restrictions on the scope of the restoration. Things are different, we explained, when a state sends the former prisoner a document informing him that his civil rights have been restored—unless, in the language of the statute, "such pardon, expungement, or restoration of civil rights *expressly* provides that the person may not ship, transport, possess, or receive firearms" (emphasis added):

> The notice rule is designed not for statutes ... that return the right to vote and cut hair but for communications that seem to have broader import. If, for example, the governor issues a pardon that by virtue of state law does not restore the right to carry guns, then unless the state tells the felon this the federal government will not treat him as convicted. The second sentence of § 921(a)(20) is an anti-mouse-trapping rule. If the state sends the felon a piece of paper implying that he is no longer "convicted" and that *all* civil rights have been restored, a reservation in a corner of the state's penal code can not be the basis of a federal prosecution. A state must tell the felon point blank that weapons are not kosher. The final sentence of § 921(a)(20) cannot logically mean that the state may dole out an apparently-unconditional restoration of rights yet be silent so long as any musty statute withholds the right to carry guns. Then the state never would need to say a peep about guns; the statute would self-destruct. It must mean, therefore, that the state sometimes must tell the felon that under state law he is not entitled to carry guns, else § 922(g) does not apply.

902 F.2d at 512 (emphasis in original).

Three of Glaser's burglary sentences, imposed in 1983 and served concurrently, expired in 1986. On releasing him, Minnesota gave Glaser this certificate, preprinted except for the underlined personal details, which were typed in:

> This is to certify that Richard Raymond Glaser, who was on the 20th day of May, 1983, sentenced to the Commissioner of Corrections by the District Court of Washington; Washington County, has completed such sentence and is hereby discharged this 17th day of June, 1986; and that pursuant to Minnesota Statutes, Section 609.165 the said Richard Raymond Glaser is hereby restored to all civil rights and to full citizenship, with full right to vote and hold public office, the same as if such conviction had not taken place.
>
> *NOTE: Be advised that this certificate does not relieve you of the disabilities imposed by the Federal Gun Control Act.

The information was not altogether accurate. Although the certificate tracks the language of Minn.Stat. § 609.165 in stating that "all civil rights" are restored "as if such conviction had not taken place", a law enacted after § 609.165 provides that a person convicted within the last 10 years, in Minnesota or elsewhere, may not possess a pistol. Minn. Stat. § 624.713(1)(b). The paragraph beginning " *NOTE" has independent problems. There is no "Federal Gun Control Act." Sections 921 to 928 of the criminal code originated in Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 and have been amended, moved, and recodified; § 921(a)(20) was added by § 101 of the curiously titled Firearms Owners' Protection Act of 1986, Pub.L. 99–308, 100 Stat. 449 (May 19, 1986). Many other federal laws affect the possession, sale, and use of firearms; the certificate does not distinguish among them.

■ Glaser returned to his profession. Soon he was back in prison. Between his release in 1986 and his new conviction in 1988, Minnesota amended § 609.165(1a), which now provides that an order discharging a probationer from custody or restoring a prisoner's civil rights "must provide that a person who had been convicted of a crime of violence ... is not entitled to ship, transport, possess, or receive a firearm until ten years have elapsed since the person was restored

to civil rights". This law is designed to furnish the "express" notice required by § 921(a)(20). *State v. Moon,* 463 N.W.2d 517, 519 (Minn.1990). Apparently no one told the Commissioner of Corrections. When the state let Glaser out in 1990, he received the same certificate as in 1986, this time omitting the note about federal law. It was even less accurate than before.[1]

■ Glaser's argument is straightforward. Each time Minnesota let him go, the state tendered a certificate restoring his civil rights. Neither certificate "expressly provides that [he] may not ship, transport, possess, or receive firearms." 18 U.S.C. § 921(a)(20). The district court did not stop here, however. It concluded that Minnesota *statutes* expressly limit felons' entitlement to possess guns—pistols when Glaser was released in 1986, all guns when he was set free in 1990—and that these statutes are equivalent to notice in the certificate. Although the Supreme Court of Minnesota remarked in *Moon* that until § 609.165(1a) added the 10-year restriction in 1987 "federal law enforcement officials could ... [not] enforce the federal firearms restriction against persons convicted of felonies in Minnesota who had been restored to civil rights", 463 N.W.2d at 519, a panel of the eighth circuit treated this as dictum and held that the pistol statute made Minnesota convictions available as predicate felonies under federal law, despite silence in certificates restoring civil rights. *United States v. Ellis,* 949 F.2d 952, 955 (8th Cir.1991); see also *United States v. Traxel,* 914 F.2d 119 (8th Cir.1990). Glaser contended that the eighth circuit's approach conflicts with *Erwin;* the district court responded: "I view the interpretation of the Minnesota statutes by the Eighth Circuit as binding on a district court in another circuit."

■ Nothing the eighth circuit decides is "binding" on district courts outside its territory. Opinions "bind" only within a vertical hierarchy. A district court in Wisconsin

must follow our decisions, but it owes no more than respectful consideration to the views of other circuits. *Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1123 (7th Cir.1987). On questions of state law, any conflict between the views of the state's highest court and those of a federal court must be resolved in favor of the state's understanding of its law. Cf. *Salve Regina College v. Russell,* 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The passage we have quoted from *Moon* was not, however, an interpretation of state law. Whether a particular statement in the statute books or a certificate satisfies the "unless" clause of § 921(a)(20) is a question of federal law, on which *Moon* announced one view and *Ellis* another. The district court was entitled to reach an independent conclusion, as are we.

*Traxel,* the eighth circuit's first encounter with the interaction between § 921(a)(20) and Minnesota law, did not discuss the effect of the certificate Minnesota hands to discharged prisoners. *United States v. Davis,* 936 F.2d 352 (8th Cir.1991), took up the case of a prisoner who received the same printed form handed to Glaser in 1986. The court recognized that § 921(a)(20) asks whether a certificate contains an "express" provision "that the person may not ship, transport, possess, or receive firearms." The 1986 version of Minnesota's certificate met the standard, *Davis* held, because of the note about federal law:

> This explicit notice to Davis of his continuing disabilities under the Federal Gun Control Act (1) makes this case significantly different from *United States v. Traxel,* 914 F.2d 119 (8th Cir.1990), in which it does not appear that any such notice was given to Traxel; and (2) makes it unnecessary for us to consider the application of § 921(a)(20) to the circumstances of this case in the absence of such notice.

936 F.2d at 357 n. 6. What happens when Minnesota passes out a certificate missing this note? *United States v. Wind,* 986 F.2d

---

1. Burglary is a "crime of violence" under state as well as federal law, Minn.Stat. § 624.712(5), so Glaser should have been advised about the 10-year firearms restriction—if that is what the new law creates. Minnesota did not enact a formal limitation corresponding to the notice; so far as the state's statutes are concerned, there is no penalty for possessing a firearm within 10 years of release. Nonetheless, the parties treat the amended § 609.165(1a) as establishing a substantive limitation, and we do likewise.

1248, 1251–52 (8th Cir.1993), holds that an unconditional certificate of restoration of civil rights in Minnesota means that the conviction does not count under federal law, even though the omission of the restrictions specified in Minn.Stat. § 624.713(1)(b) (the pistol rule) and § 609.165(1a) (the 10–year bar on all firearms) "was apparently an oversight." *Wind,* 986 F.2d at 1252. Thus the eighth circuit would count Glaser's 1983 convictions despite the 1986 certificate, but it would not count his 1988 conviction in light of the 1990 certificate.[2] Glaser therefore would receive a minimum term of 15 years in the eighth circuit.

But we are not the eighth circuit, and we do not agree with *Davis.* Neither does the fourth circuit. *United States v. McBryde,* 938 F.2d 533 (4th Cir.1991) (even express notice that federal law bars possession of firearms does not satisfy the last sentence of § 921(a)(20).) Section 921(a)(20) says, to quote the critical sentence yet again: "Any conviction ... for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." The language "Be advised that this certificate does not relieve you of the disabilities imposed by the Federal Gun Control Act" is some distance from an "express" warning "that the person may not ship, transport, possess, or receive firearms." It tells the prisoner that federal law is in the picture, but it does not tell him "expressly" or even by implication what federal law provides. Reference to a nonexistent "Federal Gun Control Act" really does not tell the prisoner anything. Even mention of the correct statute, Title IV of the Omnibus Crime Control and Safe Streets Act of 1968 and its plentiful amendments, would not supply the essential information about disabilities under state law.

When Minnesota printed the certificate, the note would have been informative. *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), held that whether a state conviction counts for purposes of § 922(g) and § 924(e)(1) was a question of *federal* law, so that even an absolute pardon coupled with abrogation of all state limits on the possession of firearms did not avoid the disability specified in the United States Code. Advice that restoration of civil rights within the state did not affect liabilities under a "Federal Gun Control Act" was an effective, if slapdash, warning about the holding of *Dickerson.* Read as a whole, the certificate meant: "Minnesota is restoring all the civil rights it can, but federal law does not permit us to go all the way." Congress changed *Dickerson*'s rule in May 1986 when providing in the amended § 921(a)(20) that "What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." The amended law permits a state to restore all civil rights, including the right to possess firearms, if it wants—and the 1986 version of the certificate said that Minnesota so wanted (although the certificate did not accurately relate state law). After the amendment, ex-prisoners need advice about the effect of pardons and restorations of rights under *state* law—and the final sentence of § 921(a)(20) says that the advice must be "express." Glaser did not receive correct advice about his rights under Minnesota law, not in 1986 and not in 1990. *Davis* did not consider what the 1986 certificate implied about Minnesota law before the amendment to § 921(a)(20); instead the eighth circuit treated this preamendment

---

**2.** Two members of the panel in *Wind* not only joined Judge McMillian's opinion for the court but also filed a concurring opinion contradicting that opinion. According to the concurrence, "[t]he fact that the order of discharge did not contain an express limitation on the right to possess firearms is not controlling.... [T]o determine whether a defendant's prior conviction can be used for sentence enhancement, this court must: (1) determine whether the order of discharge itself contains an express limitation on the right to possess firearms, and if it does not; (2) determine whether the defendant is prohibited by state law from possessing firearms." 986 F.2d at 1252 (Magill, J., joined by Hansen, J.). Because Minnesota now restricts felons from possessing all firearms for 10 years after release, this perspective should have led the concurring judges to conclude that Wind's state conviction counted for federal purposes. Still, they joined Judge McMillian's opinion and the judgment remanding for resentencing.

language as if it were an effort to *satisfy* the "unless" clause. That was not to come in Minnesota until 1987, and administrators bollixed the job by neglecting to include the terms of Minn.Stat. § 609.165(1a) in certificates restoring prisoners' civil rights.

The "note" in the 1986 certificate might serve an additional function, one important even today. Two courts of appeals have concluded that restoration of rights under state law bars the use of prior *federal* convictions in prosecutions under § 922(g) and § 924(e)(1). *United States v. Edwards,* 946 F.2d 1347 (8th Cir.1991); *United States v. Geyler,* 932 F.2d 1330 (9th Cir.1991). Contra, *United States v. Jones,* 993 F.2d 1131 (4th Cir.1993). The Supreme Court will take up the question this Term. *United States v. Beecham,* 993 F.2d 1539 (4th Cir.), cert. granted, ___ U.S. ___, 114 S.Ct. 466, 126 L.Ed.2d 418 (1993). A warning like that in the 1986 certificate might convey the message that the state does not seek to alter the effect of convictions entered by federal courts. *Edwards* arose in Minnesota, but the eighth circuit did not discuss the effect of the "note" printed on restoration certificates; Edwards was released in 1989, and perhaps by then Minnesota was using the form Glaser received in 1990. No matter. Glaser's prior convictions were imposed under state law, and nothing in the certificates he received in 1986 and 1990 told him that Minnesota placed restrictions on his possession of firearms.

Some courts have concluded that the omission of express language from pardons and certificates restoring civil rights does not matter, that the presence of such restrictions in the state's penal code is enough. E.g., *United States v. Cassidy,* 899 F.2d 543, 549 n. 5 (6th Cir.1990); *United States v. McLean,* 904 F.2d 216, 218 (4th Cir.1990). *Erwin* expressed grave doubts about this approach, a sentiment in which we have the company of the first and fifth circuits. *United States v. Ramos,* 961 F.2d 1003, 1006–08 (1st Cir. 1992); *United States v. Thomas,* 991 F.2d 206, 210–13 (5th Cir.1993). Cases such as *Cassidy* and *McLean* slight the difference between statutes and personal notices. A person who contends that state statutes have

restored all of his civil rights comes under the penultimate sentence of § 921(a)(20); as we held in *Erwin,* it is necessary to examine the whole of state statutory law to determine whether the state treats him as "convicted" for the purpose of possessing firearms. When the state gives the person a formal notice of the restoration of civil rights, however, the final sentence of § 921(a)(20) instructs us to look, not at the contents of the state's statute books but at the contents of the document. Cases in this circuit since *Erwin* have been consistent in drawing this line. E.g., *Roehl v. United States,* 977 F.2d 375, 377 (7th Cir.1992); *United States v. Wagner,* 976 F.2d 354, 355 (7th Cir.1992); *United States v. Decoteau,* 932 F.2d 1205, 1207–08 (7th Cir.1991).

*Roehl* calls "arguable" the proposition, taken up by the prosecutor in this case, that "the restoration of civil rights intended under 18 U.S.C. § 921(a)(20) must be an individualized decision, as the expungement, setting aside, or pardon, also enumerated, would be. *Noscitur a sociis.*" 977 F.2d at 378. Arguable yes; persuasive no. Neither pardons nor expungements are necessarily individualized. President Carter pardoned everyone convicted of nonviolent offenses against the draft laws during the Vietnam War; President Jefferson pardoned everyone convicted of violating the Sedition Act of 1798. Many statutes, state and federal, "expunge" all convictions for juvenile offenses. One federal law provides for routine expungement, 18 U.S.C. § 3607(c) (drug possession by a person under 21), another for automatic sealing of the criminal record and restoration of civil rights, 18 U.S.C. § 5038(a) (federal juvenile offenses). State laws frequently contain one or more of these features. E.g., Wis.Stat. § 48.35(1)(a). A "restoration of civil rights" almost always is a generic action, affecting entire classes of crimes and criminals. Nothing in § 921(a)(20) distinguishes according to the frequency with which a state dispenses some boon. The statutory question is whether, when the state disseminates a writing purporting to restore all civil rights, the document contains a firearms qualification.

Glaser twice received papers telling him that he had been "restored to all civil rights

and to full citizenship, with full right to vote and hold public office, the same as if such conviction had not taken place." Neither certificate said that Minnesota does not permit him to possess weapons. Accordingly, his burglary convictions of 1983 and 1988 do not count for purposes of § 924(e)(1). Reasonable persons may differ in their reactions to this conclusion. Some may think it an unwarranted immunity bath to give this effect to papers states handed out while *Dickerson* was the prevailing law, and states therefore would not have been sensitive to the effects their language had on federal prosecutions. Others may think that making ex-prisoners secure in relying on apparently unqualified language does no more than avoid a sting in which the state certificate dangles the bait and the national government springs the trap. It is not our function to choose sides on questions of public policy. We stop with the text of the statute. Federal law asks whether the state's advice is explicit; Minnesota's was not.

REVERSED.

PELL, Circuit Judge, dissenting.

Although I regard the majority opinion well reasoned and scholarly, I am unable to agree with the result it has reached, and therefore respectfully dissent.

Glaser, although still in his early thirties, spent a goodly proportion of his twenties in the toils of the law in Minnesota. As the majority opinion observed of his penchant "Glaser returned to his profession. Soon he was back in prison."

It appears to me that it is sufficient for disposition of this appeal by looking only at his first go around with imprisonment. While he served one continuous term, it was because he was serving three sentences concurrently. This by the nature of such was for separate convictions on three counts of felony burglary, each being a separate crime of violence pursuant to Minnesota statute § 624.712, subd 5. Separate sentences of 37 months, 32 months and 37 months were entered. Although all were served concurrently, it in my opinion, provides without more a basis for activation of 18 U.S.C. § 921(a)(20).

Whether it is activated in his case depends upon the extent to which his slate is cleaned by the benevolent policy of Minnesota with regard to convicted criminals who have served three sentences of imprisonment.

On June 17, 1986, Minnesota discharged Glaser from his 1983 burglary convictions. This certificate specifically stated: " *NOTE: Be advised that this certificate does not relieve you of the disabilities imposed by the Federal Gun Control Act." By this language, Minnesota told Glaser "point blank that weapons are not kosher." *Erwin,* 902 F.2d at 513. This identical notice language was approved in *United States v. Davis,* 936 F.2d 352 (8th Cir.1991):

> Thus not only were Davis's full civil rights with respect to firearms not restored, but also he was given explicit notice of that fact in a manner that we believe sufficient to satisfy the 'unless' clause of § 921(a)(20). By flagging Davis's continuing disabilities under the Federal Gun Control Act, the letter made it plain that the restoration of his civil rights by the state of Minnesota was less than complete and did not include the right to 'ship, transport, possess, or receive firearms.' This is all the 'unless' clause of § 921(a)(20) requires.

*Davis,* 936 F.2d at 357.

Given this explicit notice, the Eight Circuit counted the burglary conviction for which discharge had been given as one of the three predicate convictions for the application of § 924(e)(1). Similarly, in the case before us, the form discharge given to Glaser clearly told him that he was not receiving a full restoration of his civil rights because the disabilities under federal law were still applicable to him.

It is to be noted that the Eight Circuit was unaware of the point made in the majority opinion that there is no "Federal Gun Control Act." Even if there is no statute with that exact name tag, we are here dealing with federal statutes which expressly are concerned with gun control. What should have been clear to Glaser was at least as to guns there was a notification that his slate was less than clean. It would be stretching imagination beyond the breaking point to

think he may have said to himself: "Ha! There just isn't any such statute."

I agree with the majority opinion that the Eighth Circuit was not "binding" on a district court in the Seventh Circuit. Yet it being from a federal court which includes the state of Minnesota, its opinions on state laws involved in federal cases is entitled to substantial respect just as we would expect similar respect to be accorded in other circuits to a decision of this circuit on Wisconsin law involved in a federal case before us.

While, of course, I do not rest my dissent on the following observation, I find in this case very little reason for thinking in the case of Glaser that he would have been deterred from following his "profession" if this restoration to civil rights document had spelled out in painful detail that under no circumstances was he to have any traffic with guns.