STATE of Minnesota, Respondent,

v.

William Arthur ANDERSON, Appellant.

No. A05–1167.

Supreme Court of Minnesota.

June 14, 2007.

G. Tony Atwal, Assistant State Public Defender, Minneapolis, MN, for Appellant.

John J. Muhar, Itasca County Attorney, Grand Rapids, MN, for Respondent.

## OPINION

ANDERSON, PAUL H., Justice.

The Itasca County District Court placed William Arthur Anderson on probation after he pleaded guilty to felony burglary in 1995. Five years later, the court discharged Anderson from probation and ordered that his felony conviction be deemed a misdemeanor under Minn.Stat. § 609.13, subd. 1 (2006). Anderson was later convicted of another felony and again placed on probation. Four months after sentencing, he signed a probation agreement requiring him to permit warrantless, suspicionless searches of his person and property. Approximately six months later, Anderson's probation officer received a tip that Anderson had guns at his residence and as a result, the probation officer conducted a warrantless search of Anderson's residence and seized two guns. Anderson was subsequently charged with being a felon in possession of a firearm. Anderson pleaded not guilty and moved the district court to suppress the guns as products of an unconstitutional search. The district court denied the motion, and a jury found Anderson guilty as charged. The court then sentenced Anderson to 60 months in prison.

Anderson appealed to the court of appeals, arguing that the district court erred when it refused to suppress the guns. He also argued that the court erred in applying the firearm prohibition statute to him because under section 609.13, his 1995 conviction was not for a statutorily defined crime of violence. The court of appeals affirmed as to both issues, and we granted Anderson's petition for further review. Because we conclude that the district court did not err in applying the firearm prohibition statute to Anderson and that the search of Anderson's residence was reasonable under the totality of the circumstances, we affirm.

In 1995, appellant William Arthur Anderson pleaded guilty in Itasca County to second-degree burglary, a felony under Minn.Stat. § 609.582, subd. 2 (2006). The Itasca County District Court stayed imposition of Anderson's sentence and placed him on supervised probation for five years. In 2001, the court discharged Anderson from probation and ordered his felony burglary offense be deemed a misdemeanor under Minn.Stat. § 609.13, subd. 1(2) (2006). Approximately three years later, Anderson pleaded guilty in Itasca County to fifth-degree controlled substance crime, a felony under Minn.Stat. § 152.025, subds. 2(1), 3(a) (2006). The court stayed adjudication of the crime and placed Anderson on supervised probation for five years. Approximately four months after Anderson's sentencing hearing, he signed a probation agreement. One of the conditions listed on this agreement—general condition 6—required him, "when ordered by [his] Agent, [to] submit to search of [his] person, residence, or any other property under [his] control." Anderson now alleges that this search condition is invalid because it was not imposed by the district court at sentencing.

The facts surrounding the alleged unconstitutional search are as follows. On September 20, 2004, Investigator Greg

Snyder of the Itasca County Sheriff's Department learned from the mother of Anderson's girlfriend that Anderson had been arrested in Superior, Wisconsin and had posted bail. Snyder telephoned the Superior Police Department, which confirmed that Anderson had been arrested for domestic assault against his girlfriend. Snyder then telephoned Anderson's probation officer, Anthony Athmann, and left a voicemail message regarding what he had learned. On the same morning, Athmann received a telephone call from a person who identified herself as the mother of Anderson's girlfriend. The caller told Athmann that Anderson had assaulted her daughter in a Superior, Wisconsin hotel room. The caller also told Athmann that according to her daughter, Anderson kept guns under his bed and a large amount of methamphetamine in a secret room behind his clothes dryer.

After receiving this call, Athmann telephoned the Superior police department and confirmed that Anderson had been arrested for domestic assault. Athmann attempted to reach Anderson to discuss the alleged assault, but was unable to do so. Athmann then obtained permission from his supervisor to search Anderson's residence. Later that day, Athmann, Snyder, and Deputy Mike Olson traveled to Anderson's residence, where Anderson's son allowed them to enter. The officers encountered Anderson on entering the residence, and Athmann told Anderson that he was there to conduct a search in keeping with general condition 6 of Anderson's probation agreement. Anderson responded, "[T]hat's fine. I've got nothing to hide."

Athmann and Snyder searched Anderson's bedroom and found one 20–gauge shotgun and one .22 caliber semiautomatic rifle under Anderson's bed. Shortly thereafter, the state charged Anderson with one count of being a felon in possession of a firearm in violation of Minn.Stat. §§ 609.165, subd. 1b, 609.11 (2006). Anderson pleaded not guilty and moved the district court to suppress the guns as fruits of a nonconsensual, warrantless search conducted without probable cause, in violation of the Fourth Amendment. Based on the foregoing facts, the court denied Anderson's motion to suppress the guns after concluding that, among other things, Anderson's probation condition regarding searches was reasonable, and Anderson's probation agent had reasonable grounds to search Anderson's residence under federal Fourth Amendment jurisprudence.

The first witness to testify at Anderson's trial was T.R., Anderson's former girlfriend. T.R. said that she lived at Anderson's residence from June to September 2004 and that Anderson's son, T.A., and the son's girlfriend also sometimes resided there that summer. T.R. said that in July, a man named Isaac S. gave Anderson a shotgun at Anderson's residence. Anderson then gave T.R. the gun and asked her to put it under his bed. T.R. said that she placed the gun in a storage compartment under the bed, and when doing so, observed that a second gun was being stored there. She stated that she saw the same two guns in the compartment in August and in early September. She also stated that on September 19, she told her mother about the guns and the fact that Anderson had threatened her.

Probation officer Athmann testified that on September 20, T.R.'s mother telephoned him and indicated that Anderson had guns at his residence. Athmann said he then contacted Snyder, and later that day, he, Snyder, and Olson met to search the residence. Athmann stated that they encountered Anderson's son and the son's girlfriend a short distance from Anderson's

residence, and they accompanied the officers to the residence, where Anderson's son allowed them to enter. Once inside, Athmann introduced himself to Anderson, who was seated in the living room. Athmann testified that he told Anderson he was there to search for firearms and asked where Anderson's bedroom was located. Athmann said that Anderson pointed toward the bedroom. Athmann said that Anderson remained seated while he and Snyder proceeded to the bedroom, where he located a compartment under the bed containing one 20–gauge shotgun and one .22 caliber semiautomatic rifle. Athmann said that as Anderson was being arrested for probation violations, Anderson asked his son why he had placed the guns in Anderson's bedroom.

The next witness was Deputy Olson. Olson's account of the search was largely consistent with Athmann's, but for the following details. Olson stated that after T.A. met the three officers and accompanied them to Anderson's residence, T.A. knocked on the door. An unidentified man opened the door, and the officers stepped inside and saw Anderson in a hallway. Olson said that Athmann told Anderson the officers were there to search for a possible weapon, and the officers then asked Anderson to sit on the couch while they completed the search. Olson's account was generally corroborated by the testimony of Snyder, except that Snyder remembered Anderson saying to T.A. as Anderson was being arrested, "I thought your mother got all your guns out of here." Snyder also stated that no useable fingerprints were found on the two guns seized from Anderson's residence, and both guns were originally purchased by persons who

were apparently unacquainted with Anderson.

Anderson's former wife T.D., who is also the mother of T.A., testified that she brought two guns to Anderson's residence sometime in mid-September and gave them to T.A. for use in hunting. T.D. said that the guns she brought belonged to T.A., but she could neither describe nor identify the guns as the 20–gauge shotgun and .22 caliber semiautomatic rifle in evidence. T.A.'s girlfriend also testified that T.D. brought guns to Anderson's residence for T.A., but the girlfriend was subsequently impeached by the playing of a recorded interview with Snyder, in which she stated that she was unaware of anyone bringing weapons into Anderson's residence.

Anderson's friend D.E. testified that on approximately September 13, he visited T.R. at Anderson's residence while Anderson was in jail on probation violations. D.E. said that he saw two guns that looked like rifles on a gun rack in Anderson's bedroom. Knowing that Anderson was prohibited from possessing guns, D.E. asked T.R. why the guns were there, and T.R. responded that T.A. brought them for hunting. T.R. also told D.E. that she would "take care of [them]."

Anderson did not testify, but his counsel asserted in closing argument that Anderson did not knowingly possess the guns because someone had brought them into Anderson's residence while Anderson was in jail in September for probation violations. The jury apparently rejected Anderson's version of events because it found him guilty of being a felon in possession of a firearm. The district court then sentenced Anderson to 60 months in prison.[1] Anderson appealed his conviction to

---

1. Before he was sentenced, Anderson moved the court for a new trial based on evidence that T.R. gave false testimony at his trial. The court denied the motion, which is not at issue in this appeal.

the court of appeals, arguing that he was improperly convicted of being a felon in possession because on his completion of probation for the prior felony burglary conviction, that conviction was deemed a misdemeanor by operation of Minn.Stat. § 609.13, subd. 1(2). *State v. Anderson,* 720 N.W.2d 854, 859 (Minn.App.2006). He also argued that the district court erred when it refused to suppress the guns as fruits of an unconstitutional search, and that he was denied a fair trial because of prosecutorial misconduct. *Id.* at 861, 864. The court of appeals rejected all three arguments and affirmed Anderson's conviction. *Id.* at 865.

On appeal, Anderson asks us to decide (1) whether a felony burglary conviction that is later deemed a misdemeanor under section 609.13 is a "crime of violence" for the purposes of the firearm prohibition statute; and (2) whether the Fourth Amendment of the U.S. Constitution or the Minnesota Constitution requires courts to suppress evidence seized during a warrantless search of a probationer's residence, when the probationer's signed probation agreement contains an administratively imposed condition allowing warrantless, suspicionless searches.

I.

Minnesota Statutes § 609.165, subd. 1b(a), provides that "[a]ny person who has been convicted of a crime of violence, as defined in section 624.712, subd. 5, and who * * * possesses * * * a firearm, commits a felony." Under Minn.Stat. § 624.712, subd. 5 (2006), " '[c]rime of violence' means: *felony convictions* of * * * [section] 609.582, subdivision 1, 2, or 3 (burglary in the first through third degrees)." (Emphasis added.) Minnesota Statutes § 609.13, subd. 1(2), provides that a felony conviction "is deemed to be for a misdemeanor if the imposition of the pris-

on sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence." Anderson argues that because his prior felony burglary conviction was deemed to be a misdemeanor under section 609.13 when he was discharged from probation in 2001, he was not convicted of a "crime of violence" as defined in section 624.712, subd. 5. He then asserts that because he was not convicted of a "crime of violence," he was improperly convicted of being a felon in possession under section 609.165, subd. 1b(a). Anderson concedes that he is challenging the applicability of the firearm prohibition statute for the first time on appeal, but he asks us to review his claim in the interests of justice.

■ We do not ordinarily decide "issues that are raised for the first time on appeal, even constitutional questions of criminal procedure." *State v. Allen,* 706 N.W.2d 40, 43 (Minn.2005). But we may consider such an issue if it implicates a plain error affecting substantial rights. *Id.* In rare circumstances, we may also consider such an issue when the interests of justice require and when doing so would not work an unfair surprise on a party. *See id.* Here, Anderson does not explain why we should bypass a plain error analysis and instead consider his claim in the interests of justice, other than to note "the important liberty interest at stake." Accordingly, we conclude that Anderson's claim is subject to review under the plain error doctrine.

■ Appellate review under the plain error doctrine requires Anderson to establish (1) error; (2) that is plain; and (3) that affects his substantial rights. *See State v. Manthey,* 711 N.W.2d 498, 504 (Minn. 2006). If all three elements are met, we will determine whether it is necessary to address the error to ensure the fairness and integrity of the judicial proceedings.

*Id.* Whether Anderson establishes the first element—error—depends in this case on the interpretation of sections 609.13 and 624.712. We review de novo the interpretation of criminal statutes. *State v. Koenig,* 666 N.W.2d 366, 372 (Minn.2003). "The object of statutory interpretation is to effectuate the intent of the legislature," and "a statute's words and phrases are to be given their plain and ordinary meaning." *Id.*

 Anderson argues that under section 609.13, the discharge from probation for his 1995 felony burglary conviction not only affected the status of that conviction going forward but also altered what happened in the past, such that on discharge, he was a person who has been convicted of a misdemeanor. Accordingly, he argues that as a matter of plain language, he cannot be a person who "has been convicted of a 'crime of violence' " under section 609.165, subd. 1b(a), because "crimes of violence" as defined by section 624.712, subd. 5, are necessarily felonies. The state argues that under the plain language of the foregoing sections as applied in *State v. Moon,* 463 N.W.2d 517 (Minn. 1990), the fact that Anderson's felony conviction was later deemed a misdemeanor under section 609.13 does not change the fact that Anderson has been convicted of a crime of violence and is therefore prohibited from possessing a firearm.

In *Moon,* we held that a felony theft conviction later deemed a misdemeanor under section 609.13 was a crime of violence under section 624.712, subd. 5, for the purposes of the firearm prohibition statute. 463 N.W.2d at 521. In support of our holding, we reasoned that

> [s]ection 609.13 does not preclude the legislature from imposing consequences * * * to protect the safety of the public, based on an offender's commission of criminal acts which also constitute felo-

nies. In enacting section 609.165, subdivision 1a, the legislature intended the nature of the [prior] offense rather than the subsequent treatment of the offender to be the basis for the imposition of the firearms restriction. * * * [T]he definitions of the offenses listed as crimes of violence in section 624.712, subdivision 5, relate to the elements of the offense for which the defendant was originally convicted rather than the disposition subsequently imposed by the trial judge.

*Id.* Notwithstanding this reasoning, Anderson argues that post-*Moon* amendments to section 624.712, subd. 5, reveal the legislature's intent to exclude from "crimes of violence" all felonies later deemed misdemeanors under section 609.13.

Like the current version of section 624.712, subd. 5, the 1990 version of the statute that we construed in *Moon* included a long list of offenses identified as crimes of violence. But in the 1990 version, only three of the numerous listed offenses were modified by the words "felony" or "felonious." *See Moon,* 463 N.W.2d at 520. We explained that an analysis under section 609.13 was not required when a person committed one of the numerous offenses not modified by the words "felony" or "felonious" because section 624.712, subdivision 5, would clearly apply to any level of conviction for that offense. *See id.* We also stated that the legislature's use of the words "felony" or "felonious" to modify certain listed offenses "arguably would invoke the operation of section 609.13" for those offenses. *Id.* But we rejected this argument because we did not believe that the legislature intended to treat offenses modified by the terms "felony" or "felonious" differently from the unmodified offenses for the pur-

poses of the firearm prohibition statute. *Id.* at 520–21.

In 2003, the legislature amended Minn. Stat. § 624.712, subd. 5, to state that " 'crime of violence' means[ ] *felony convictions of* [all listed] offenses." Act of Apr. 28, 2003, ch. 28, art. 3 § 7, 2003 Minn. Laws 265, 292–93 (emphasis added). Anderson argues, based on *Moon's* "arguably would invoke" language, that as a result of the 2003 amendment, section 609.13 is "invoked" for every offense listed in section 624.712, subd. 5.

Anderson's effort to recast our holding in *Moon* in light of the amended definition of "crime of violence" is unavailing. *Moon* instructs courts to consider the elements of a prior offense rather than its subsequent disposition when deciding whether the offense is a crime of violence, 463 N.W.2d at 521, and Anderson fails to show that the 2003 amendments undermine the propriety of that instruction. More specifically, the relevant provision of section 609.165, subd. 1b(a)—prohibiting firearm possession by "[a]ny person who *has been convicted* of a crime of violence" (emphasis added)—has not changed since we decided *Moon*. As the court of appeals stated, Anderson " 'has been convicted' of felony second-degree burglary. His conviction was later deemed a misdemeanor, but that does not change his underlying conviction for the purposes of the [firearm prohibition] statute." *Anderson*, 720 N.W.2d at 861 (quoting Minn.Stat. § 609.165, subd. 1b).

Based on the foregoing analysis, we conclude that Anderson has not established that the district court committed error when it applied the firearm prohibition statute to him. Accordingly, no further inquiry is warranted under our plain error doctrine, and we proceed to Anderson's search and seizure claim.

## II.

■■■ We review de novo a district court's ruling on constitutional questions involving searches and seizures. *See State v. Wiegand,* 645 N.W.2d 125, 129 (Minn. 2002). We will not reverse the court's factual findings unless the findings are clearly erroneous or contrary to law. *Id.* In this case, the court's factual findings are not in dispute.

Anderson argues that a warrantless search of a probationer's residence violates the Fourth Amendment unless it is predicated on reasonable suspicion and conducted under a valid search condition. He argues that in this case, his probation officer lacked reasonable suspicion to search his residence, and his probation condition was invalid because it was imposed in a manner that violated Minnesota law and the Sixth Amendment. Finally, he asks us to conclude that the Minnesota Constitution prohibits warrantless probation searches and prohibits probation conditions that allow such searches.

■■■ Before addressing Anderson's arguments, it is helpful to briefly survey the landscape of federal and state law pertaining to probation searches. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Warrantless residential searches and seizures are presumptively unreasonable under the Fourth Amendment. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). But the U.S. Supreme Court has held that a state's probation system "presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause-requirements." *Griffin v. Wisconsin,* 483 U.S. 868, 873–74, 107 S.Ct. 3164, 97 L.Ed.2d 709

(1987). One such special need is the state's exercise of supervision to ensure that probationers observe the restrictions placed upon them. *Id.* at 874–75, 107 S.Ct. 3164. Applying the foregoing principles, the Court held in Griffin that a warrantless search of a probationer's residence is reasonable when conducted under a state regulation, which regulation permits such searches when (1) the probation officer's supervisor approves the search; and (2) the officer has reasonable grounds to believe the residence contains contraband. *Id.* at 871, 880, 107 S.Ct. 3164.

Fourteen years after deciding *Griffin,* the Supreme Court again examined the reasonableness of a warrantless search of a probationer's residence in *United States v. Knights,* 534 U.S. 112, 114, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001). The Court began its analysis in *Knights* by adopting a totality of the circumstances approach for probation searches, in which

> the reasonableness of a search is determined "by assessing, on the one hand, the degree to which [the search] intrudes upon an individual's privacy and, on the other, the degree to which [the search] is needed for the promotion of legitimate governmental interests."

*Id.* at 118–19, 122 S.Ct. 587 (quoting *Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999)). The Court noted that on the individual privacy side of the balance, a probationer's status deprives him of "some freedoms enjoyed by law-abiding citizens." *Id.* at 119, 122 S.Ct. 587. The Court also identified as "a salient circumstance" the fact that Knights had agreed to a probation condition, which "significantly diminished [his] reasonable expectation of privacy."[2] *Id.* at 118, 120, 122 S.Ct. 587. On the governmental inter-

ests side of the balance, the Court noted dual concerns: integrating the probationer back into the community and combating recidivism. *Id.* at 120–21, 122 S.Ct. 587. The Court held that in light of the facts and circumstances of Knights' case, the balancing of private and governmental interests "require[d] no more than reasonable suspicion to conduct a search of [a] probationer's house." *Id.* at 121, 122 S.Ct. 587.

We have also recognized that as a result of the "special relationship" between probation officers and probationers, the reasonableness of "probation searches cannot be strictly governed by automatic reference to ordinary search and seizure law." *State v. Earnest,* 293 N.W.2d 365, 368 (Minn.1980). In light of the demands created by that relationship—balanced against the probationer's lowered expectations of privacy—we held in *Earnest* that a warrantless search of a probationer's residence did not violate the Fourth Amendment when based on probable cause. *Id.* at 368–69. But we expressly declined to decide whether a warrantless probation search supported by less than probable cause would be reasonable. *Id.* at 369 n. 5.

Anderson asserts that under *Knights,* a probation search cannot comply with the Fourth Amendment unless it is supported by reasonable suspicion and conducted under a *valid* probation condition. We need not, and do not, reach the issue of whether absent a valid probation condition, a probation search based on reasonable suspicion violates the Fourth Amendment because we conclude that (1) the search was supported by reasonable suspicion; and (2) based on the record before us, we must presume that Anderson's probation condi-

---

2. The probation condition required Knights to submit his residence to a search "at anytime [sic], with or without a search warrant, war- rant of arrest or reasonable cause." 534 U.S. at 114, 122 S.Ct. 587.

138

tion is valid. Accordingly, we are able to decide this case by balancing Anderson's individual privacy rights against the state's legitimate interests using *Knights'* totality of the circumstances approach.

*Reasonable Suspicion*

 Reasonable suspicion requires "a sufficiently high probability that criminal conduct is occurring to make the intrusion on the [probationer's] privacy interest reasonable." *Knights,* 534 U.S. at 121, 122 S.Ct. 587. Reasonable suspicion is more than "an unarticulated hunch." *State v. Wasson,* 615 N.W.2d 316, 320 (Minn.2000). It is " 'a particularized and objective basis for suspecting [a] person * * * of criminal activity.' " *State v. Martinson,* 581 N.W.2d 846, 850 (Minn.1998) (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

 Anderson argues that his probation officer did not have reasonable suspicion of criminal activity because (1) the officer could not be certain of the identity of the telephone caller who claimed to be T.R.'s mother; (2) the officer failed to contact T.R. to corroborate the caller's statements; (3) the officer failed to make more than one attempt to reach Anderson to discuss the Superior, Wisconsin assault; and (4) the officer's telephone call to the Superior police department yielded no information about whether Anderson had guns at his residence. The state argues that Athmann had reasonable suspicion based on the telephone call from T.R.'s mother even without the added credibility that her statements gained when the Superior police department confirmed that Anderson had been arrested.

We have not previously considered a challenge to the existence of reasonable suspicion in the context of a warrantless probation search. But in an unpublished opinion, the court of appeals concluded that reasonable grounds for such a search

are established when a police officer relays to a probation officer that based on an informant's tip, the probationer "had or might have guns." *State v. Grever,* No. C0–97–864, 1997 WL 666098, at *1, 3 (Minn.App. Oct.28, 1997). In reaching this conclusion, the court of appeals quoted Griffin, in which the Supreme Court stated that it is " 'reasonable to permit information provided by a police officer, whether or not on the basis of firsthand knowledge, to support a probationer search.' " *Grever,* at *3 (quoting *Griffin,* 483 U.S. at 879–80, 107 S.Ct. 3164).

Here, Anderson's probation officer had more than "an unarticulated hunch" that Anderson had guns at his residence. The telephone call from T.R.'s mother—whose identity the officer had no reason to doubt—indicated that her daughter, who lived with Anderson, had firsthand knowledge of the guns. Moreover, the caller's statement that Anderson had been arrested in Superior, Wisconsin was corroborated when the probation officer telephoned the Superior police. As the district court noted in its findings of fact and conclusions of law, this corroboration gave added credibility to the caller's statement regarding guns. Based on the foregoing facts, we conclude that there was a sufficiently high probability that Anderson possessed guns to make the intrusion on his privacy interest reasonable. We therefore conclude that the search of Anderson's residence was supported by reasonable suspicion.

*Validity of Anderson's Probation Condition*

 Anderson argues that his probation condition is invalid because it is (1) an "intermediate sanction" that must be pronounced by a court at sentencing in order to comply with state law under *State v. Henderson,* 527 N.W.2d 827, 829 (Minn. 1995); and (2) a term of his sentence that

must be imposed in his presence under the Sixth Amendment.[3] The state contends that these arguments are procedurally barred because Anderson raises them for the first time on appeal.

We agree that Anderson's argument is procedurally barred. Anderson argued in the district court that the *"search in question* was unlawful 'under the laws of this state' and 'for constitutional reasons.' " But this argument was too broad to put either the state or the district court on notice that Anderson was challenging the validity of his probation condition. Consequently, the state was unable to present responsive arguments or evidence, a relevant factual record was not developed, and the district court did not issue findings or conclusions on point.

■ As previously stated, we may consider an issue raised for the first time on appeal if the party asserting the issue proves plain error affecting substantial rights. *Allen,* 706 N.W.2d at 43. We conclude that under the facts of this case, Anderson has not proved that the district court committed plain error when it failed to consider whether his probation condition was validly imposed in an entirely separate proceeding. Anderson's only evidence that his probation condition was *not* validly imposed is a sentencing transcript from that separate proceeding—and

Anderson did not introduce the transcript in the district court below.

■ In rare cases, we deem it appropriate to forgo plain error review and consider—in the interests of justice—an issue raised for the first time on appeal. *See Allen,* 706 N.W.2d at 43. Because the record before us is silent on the circumstances surrounding the imposition of Anderson's probation condition,[4] we conclude that this is not such a case. We therefore further conclude that the validity of Anderson's probation condition under *Henderson* or the Sixth Amendment is not properly before us and not subject to challenge in this appeal. Consequently, we must presume that the condition was validly imposed when we conduct our totality of the circumstances analysis under *Knights.*

## Totality of the Circumstances Analysis

■ Our presumption that Anderson's probation condition was validly imposed and that he therefore was "unambiguously informed of it" supports a conclusion that the condition "significantly diminished [Anderson's] reasonable expectation of privacy." *See Knights,* 534 U.S. at 119–20, 122 S.Ct. 587. More generally, Anderson's reasonable expectation of privacy was diminished merely by virtue of his status as a probationer. *See id.* at 119, 122 S.Ct. 587 ("Inherent in the very nature of probation is that probationers 'do not enjoy the

---

3. Anderson also argues that even if the condition had been properly imposed, it is facially invalid under the Minnesota Constitution. For the reasons set forth in the final section of this opinion, we decline Anderson's invitation to apply the Minnesota Constitution in the context of this case.

4. Under Minn. R.Crim. P. 28.02, subd. 8, the record on appeal consists of "the papers filed in the trial court, the offered exhibits, and the transcript of the proceedings, if any." "It is well settled that an appellate court may not base its decision on matters outside the record on appeal, and that matters not produced

and received in evidence below may not be considered." *Plowman v. Copeland, Buhl & Co.,* 261 N.W.2d 581, 583 (Minn.1977). Appellate courts will make an occasional exception to this rule by permitting gaps in the record " 'to be [filled] by documentary evidence of a conclusive nature' " in order to sustain verdicts and judgments. *Id.* (quoting *Mattfeld v. Nester,* 226 Minn. 106, 123, 32 N.W.2d 291, 303 (1948)). But the production of such evidence is never allowed in an appellate court for the purpose of reversing a judgment. *Plowman,* 261 N.W.2d at 584.

absolute liberty to which every citizen is entitled.' " (quoting *Griffin*, 483 U.S. at 874, 107 S.Ct. 3164)). On the governmental interests side of the *Knights* balancing test, we recognize the state's legitimate interest in ensuring that Anderson abides by the terms of his probation—one of which prohibits him from possessing a firearm. *See id.* at 120–21, 122 S.Ct. 587. We also acknowledge the state's interest in protecting potential victims from illegal conduct Anderson might commit.[5] *See id.* at 121, 122 S.Ct. 587. Balancing Anderson's expectations of privacy against the government's interests under the circumstances of this case, we conclude that the Fourth Amendment required no more than reasonable suspicion to conduct a search of Anderson's residence. *See Knights*, 534 U.S. at 121, 122 S.Ct. 587.

### III.

■ The Minnesota Constitution, like the Fourth Amendment, guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Minn. Const. art. I, § 10. Anderson asks us to interpret this guarantee to prohibit warrantless probation searches and to prohibit probation conditions that allow warrantless searches.

■ Looking to the state constitution as an independent basis for individual rights is a task we approach "with restraint and some delicacy," especially when the right at stake is guaranteed by identical or substantially similar language in the federal constitution. *See Kahn v. Griffin*, 701 N.W.2d 815, 828 (Minn.2005). But even when the language is identical, as it is with regard to searches and seizures, we will independently apply the state constitution

> when we conclude that the United States Supreme Court has made a sharp or radical departure from its previous decisions or approach to the law and when we discern no persuasive reason to follow such a departure. We will also apply the state constitution if we determine that the Supreme Court has retrenched on Bill of Rights issues, or if we determine that federal precedent does not adequately protect our citizens' basic rights and liberties.

*Id.* (internal citations omitted).

The Supreme Court's decision in *Knights* does not appear to be a sharp or radical departure from its previous decisions or a retrenchment on its Fourth Amendment jurisprudence with respect to probation searches. Moreover, we are not convinced that federal precedent inadequately protects our citizens' basic rights and liberties. Accordingly, we decline Anderson's invitation to deem the search of his residence unreasonable under the Minnesota Constitution.

For all of the foregoing reasons, we hold that the district court did not err when it refused to suppress the guns that were seized in the search of Anderson's residence.

Affirmed.

■

---

**5.** Before Anderson's probation officer searched Anderson's residence, he learned that Anderson had been arrested for domestic assault in Wisconsin. Given this information, it was reasonable for the government to take action to ensure that Anderson did not have easy access to guns.