STATE of Minnesota, Respondent,

v.

Walter Harold SKRAMSTAD, Appellant.

No. C1-88-378.

Court of Appeals of Minnesota.

Dec. 27, 1988.

Review Denied March 13, 1989.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, John E. Pearson, Becker County Atty., Detroit Lakes, for respondent.

C. Paul Jones, State Public Defender, Elizabeth B. Davies, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by HUSPENI, P.J., and SCHUMACHER and LESLIE, JJ.,* without oral argument.

## OPINION

HUSPENI, Judge.

Appellant, Walter Harold Skramstad, appeals from a Becker county jury verdict finding him guilty of making terroristic threats in violation of Minn.Stat. § 609.713, subd. 1. He alleges that his testimony was improperly impeached under Minn.R.Evid. 609(a); that the trial court erroneously admitted prejudicial *Spreigl* evidence; and that his conviction was based on insufficient evidence. We affirm.

## FACTS

On the morning of July 3, 1987, appellant and Gary Bevens left their White Earth residences to get appellant's car repaired in Mahnomen, Minnesota. While waiting for the car the two ate, shot pool and had a "couple beers." Appellant and Bevens left Mahnomen at approximately 1:30 p.m.

On the way back to White Earth, appellant and Bevens stopped at a liquor store in Ogema, Minnesota, to see some friends. While there, appellant and Bevens had a "couple more beers." Appellant claims one of the major topics of conversation was the Fourth of July weekend and whether there would be a dance and/or a demolition derby as there had been the previous year. One-and-a-half to two-and-a-half hours la-

ter, appellant and Bevens continued toward White Earth.

While driving out of Ogema, appellant recognized Officer John McArthur driving a police car ahead of him. Appellant closed on McArthur allegedly trying to get him to pull over so appellant could ask him whether there would be either a dance or a demolition derby during the holiday weekend. After a series of events about which testimony conflicts regarding whether appellant tried to run McArthur off the road or flag him down, both cars pulled over to the side of the road.

Appellant claims McArthur got out of his car, came at him quickly, and ordered him to turn around. Appellant maintains that when he failed to respond immediately, McArthur clubbed him several times with the nightstick he was carrying. McArthur maintains that appellant got out of his car with his fists clenched and using profanity, vehemently threatened McArthur. A scuffle ensued in which McArthur broke appellant's jaw and subsequently arrested him. At some point during the fight, Adam Tieken arrived. Neither he nor Bevens entered the fracas and both Tieken and Christine Olson, who had pulled over to the shoulder of the road across from appellant and McArthur, claimed that McArthur did not use excessive force.

After arriving at the Law Enforcement Center, appellant told McArthur "The next time I come after you there won't be the same result, I'll put you in intensive care." There was also testimony that appellant threatened "I'm going to kill you. I'm going to get your family. I know where you live." Upon being read his *Miranda* rights, appellant told McArthur "I'll see you off duty at your house." After appellant was booked, the chief jailer took notes on a number of similar threats appellant made regarding McArthur and several other local law officers.

When appellant was taken to the hospital for medical treatment of his jaw, he told the transporting deputy "The next time you have me in here it will be for murder."

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

As a result of the July 3, 1987 events, appellant was charged with making terroristic threats.

Evidence of two *Spreigl* incidents was admitted at trial. First, during the night of February 20–21, 1987, appellant noticed several police cars at a White Earth school and stopped to find out what happened. After a shoving match of disputed origin between appellant and Becker County Deputy Sheriff Daniel Morrison, appellant left the scene.

Later appellant called the Sheriff's Office requesting that Morrison be sent to appellant's house for a "one on one." Appellant stated he was unhappy with the law enforcement of a number of the local officers and that he wanted to put Morrison in the intensive care unit. Later, appellant called the Sheriff's Office demanding to know why Morrison was keeping him waiting. Profanity was used in both calls. Tape recordings of these calls were played for the jury.

The second *Spreigl* event involved an episode occurring approximately a week before the July 3, 1987 incident. Appellant and McArthur met at a gas station where they engaged in a heated argument. Appellant challenged McArthur to a fight and threatened to "get" McArthur's family.

### ISSUES

1. Did the trial court allow improper impeachment of appellant's testimony under Minn.R.Evid. 609(a)?

2. Did the trial court erroneously admit prejudicial *Spreigl* evidence?

3. Was the jury's verdict supported by sufficient evidence?

### ANALYSIS

### I.

▮ Impeachment by prior conviction is governed by Minn.R.Evid. 609. It states:

[E]vidence that [a defendant] has been convicted of a crime shall be admitted if * * * the crime (1) was punishable by * * * imprisonment in excess of one year under the law under which [the defendant] was convicted, and the court determines that the probative value of admitting the evidence outweighs its prejudicial effect, or (2) involved dishonesty or false statement, regardless of the punishment.

Aggravated assault was a felony offense. *See* Minn.Stat. § 609.225 (repealed 1979).

Appellant argues that his prior conviction for aggravated assault was reduced to misdemeanor status by Minn.Stat. § 609.13, subd. 1(2) which states:

A [felony] conviction is deemed to be for a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation and the defendant is thereafter discharged without a prison sentence.

Appellant also argues that because no dishonesty is involved in his prior crime, it was not available to impeach him under Minn.R.Evid. 609(a)(2).

That appellant successfully complied with the Minn.Stat. § 609.13, subd. 1(2) requirements is not contested. However, Minn.R.Evid. 609(c) specifically lists circumstances under which a conviction is not admissible for impeachment purposes. That list does not exempt felonies reduced to misdemeanor status. Instead, the rule specifically requires one of the following requirements be met before a prior conviction is deemed inadmissible:

[a] pardon, annulment, vacation or certificate of rehabilitation or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year. * * *

*Id.* No such finding of rehabilitation is present in this case. Also, reference to felonies reduced to misdemeanor status is notably absent from the comment to this rule.[1]

---

1. We note that the Sentencing Guidelines specifically refer to felony convictions for which a stay of imposition of sentence has been granted requiring a point be added to an offender's

Additionally, the plain language of the rule states admission is appropriate if the crime *"was punishable* by death or imprisonment in excess of one year under the law *under which [the defendant] was convicted."* Minn.R.Evid. 609(a)(1) (emphasis added). The rule addresses the maximum sentence possible at the time of conviction, not the sentence which was actually given nor any subsequent alteration of the defendant's record.

■ Alternatively, appellant argues that admission of his aggravated robbery conviction as a felony was erroneous because its probative value was outweighed by its prejudicial effect. Under rule 609(a)(1), prior felony convictions not involving dishonesty or false statements are admissible if the court determines their probative value is greater than their prejudicial effect and the trial court's determination on the subject "will be sustained unless a clear abuse of discretion is shown." *State v. Amos,* 347 N.W.2d 498, 502 (Minn.1984).

Balancing probative value and prejudice under rule 609 is governed by the five part analysis of *State v. Jones,* 271 N.W.2d 534, 537–38 (Minn.1978).

Our review of the record indicates that appellant's prior conviction for aggravated assault is not so similar to the present charge as to preclude its use for impeachment purposes. *See State v. Bettin,* 295 N.W.2d 542, 546–47 (Minn.1980). Further, the conviction is less than ten years old, *see* Minn.R.Evid. 609(b), and appellant actually testified at trial and presented his account of the events. Under such circumstances the jury could independently weigh and evaluate the credibility of appellant's testimony. We also note that the trial court gave a cautionary instruction warning the jury against using testimony of appellant's prior conviction as substantive evidence. *See State v. Heidelberger,* 353 N.W.2d 582,

590 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Sept. 12, 1984). We cannot find the required clear abuse of discretion and therefore must sustain the trial court. *See Amos,* 347 N.W.2d at 502.

■ Appellant also argues that whether his prior conviction was admitted as a felony or a misdemeanor, he should have been able to explain the circumstances of his guilty plea to the jury. Such a decision "is best left to the sound discretion of the trial court." *State v. Yeager,* 399 N.W.2d 648, 653 (Minn.Ct.App.1987). In chambers, appellant fully explained the circumstances of his guilty plea to the prior charge of aggravated assault. The court then ruled that a limited explanation might be given in the presence of the jury. This was done. We find no abuse of discretion either in limiting appellant's explanation to the jury of the circumstances of that conviction or in admission of the prior conviction as a felony.

## II.

■ Appellant argues that a new trial is required because of erroneously admitted *Spreigl* evidence of his February phone calls to the Becker County Sheriff's Office. He argues that this evidence does not fit within any of the traditional exceptions to Rule 404 and that the tape's probative value was outweighed by its prejudicial effect.

Generally,

Evidence of [crimes other than the one charged or other bad acts] is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Minn.R.Evid. 404(b).

Admission of evidence of other crimes or bad acts (*Spreigl* evidence) is in the dis-

---

criminal history score unless more than fifteen years has elapsed from the date of discharge or expiration of the sentence. *See* Minnesota Sentencing Guidelines II.B.1.d. By way of analogy, we conclude that because Minn.Stat. § 609.13, subd. 1(2) lacks any suggestion that it should be extended to cover impeachment circumstances, it was not improper for the trial court in this

case to allow impeachment of appellant with his prior felony conviction for which imposition of sentence had been stayed. *See State v. Clipper,* 429 N.W.2d 698, 700–01 (Minn.Ct.App.1988) (criminal history point assigned for prior felony despite stay of imposition of sentence). *See also* Weinstein, *Evidence,* paragraph 609(08) pp. 609–116, 117 n. 2 (1988).

cretion of the trial court, and [an appellate court] will not reverse unless an abuse of discretion is clearly shown.

*State v. Rainer,* 411 N.W.2d 490, 497 (Minn.1987) (citation omitted). Also, admission requires clear and convincing evidence that the accused participated in the bad acts, that the evidence is relevant to the state's case, and that its probative value outweighs any potential prejudice. *State v. Doughman,* 384 N.W.2d 450, 454 (Minn. 1986).

Appellant does not contest that he made the phone calls. The state argues that because of the similarity of the prior occurrence to the charged offense, the tape is relevant in rebutting appellant's position that his threats were a result of his "transitory anger" and that there was no actual intent to terrorize Officer McArthur. In view of the broad discretion accorded the trial court in these matters, we find no abuse of that discretion here.

■ Relying on *State v. Kilker,* 400 N.W.2d 450 (Minn.Ct.App.1987), appellant argues that the *Spreigl* tape unfairly focused the jury's attention on his general problem with the law enforcement community rather than on determining his culpability in this particular incident. We cannot agree. *Kilker* involved *Spreigl* evidence indicating the appellant in that case was at odds with the entire community, not a specific person. Appellant's attitudes are personal to a number of individuals in the local law enforcement community. Further, the jury was given appropriate cautionary instructions both during the trial when the *Spreigl* incident was introduced and later before the jury retired.

The use of the *Spreigl* evidence to rebut appellant's claim of transitory anger was accompanied by appropriate cautionary instructions. We find no abuse of discretion.

### III.

■ Terroristic threats are defined as: [threatening] to commit any crime of violence with [the] purpose to terrorize another * * * or in reckless disregard of the risk of causing such terror * * *

Minn.Stat. § 609.713, subd. 1. Appellant argues the state did not prove beyond a reasonable doubt that appellant made the alleged threatening statements.

In reviewing a sufficiency of the evidence claim, an appellate court must determine

whether, given the facts in the record, and the legitimate inferences that can be drawn from those facts, a jury could reasonably conclude that the defendant was guilty of the offense charged * * *. [An appellate court] must take the view of the evidence most favorable to the state and assume the jury believed the state's witnesses and disbelieved any contrary evidence. * * * If the jury, giving due regard for the presumption of innocence and to the state's burden of proving the [appellant's] guilt beyond a reasonable doubt, could reasonably have found the defendant guilty, that verdict will not be reversed.

*State v. Merrill,* 274 N.W.2d 99, 111 (Minn. 1978) (citations omitted). Additionally, resolution of conflicts and inconsistencies in testimony are the exclusive function of the jury. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980).

Several witnesses testified that on July 3, 1987, appellant made numerous threats against McArthur and his family. The jury determines the weight of trial testimony. Here, apparently, the jury believed the state's witnesses and disbelieved the testimony proffered on appellant's behalf.

■ Alternatively, appellant contests the adequacy of the evidence to support the conclusion that he intended to terrorize McArthur. The jury was specifically instructed that it must find the intent on appellant's part to terrorize McArthur in order to find appellant guilty. Despite the conflicting stories presented in this case, the testimony of the state's witness regarding the events of July 3, 1987, was consistent. We believe the jury could reasonably have inferred the intent necessary to support a guilty verdict under Minn.Stat. § 609.713.

We have considered all other issues including those raised in appellant's pro se supplemental brief and upon our complete

review of the entire record, find them to be without merit.

## DECISION

Because the trial court did not err either permitting impeachment by appellant's prior conviction as a felony, or in receiving the contested *Spreigl* evidence, and because the evidence was sufficient to support the jury's verdict, we affirm.

Affirmed.

DAVID R. LESLIE, Acting J., concurs specially.

DAVID R. LESLIE, Judge (concurring specially).

Given the primarily credibility oriented questions the jury had to decide to reach a verdict in this case, and considering the overwhelming evidence of guilt on the record, I do not question the majority's affirmance of the trial court. However, I concur specially to express my concern regarding those aspects of the majority decision dealing with the use of appellant's prior conviction for impeachment purposes and particularly the precedent this decision sets for future application of Minn.Stat. § 609.13, subd. 1(2) (1986).

### I.

Appellant's 1978 felony conviction for aggravated assault was reduced to misdemeanor status pursuant to Minn.Stat. § 609.13, subd. 1(2). The majority holds that this statutory reduction of appellant's offense is not effective regarding use of that prior conviction for impeachment purposes under Minn.R.Evid. 609(a). This is inconsistent with both the statute's language and its apparent purpose.

The statute specifically states:

*Notwithstanding* a conviction is for a felony:

\* \* \* \* \* \*

(2) *The conviction is deemed to be for a misdemeanor* if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence.

Minn.Stat. § 609.13, subd. 1 (emphasis added). The Advisory Committee Comment indicates the purpose of the statute:

It is believed desirable *not to impose the consequences of a felony* if the judge decides that the punishment to be imposed will be no more than that provided for misdemeanors or gross misdemeanors.

(Emphasis added.) In this case, it is not contested that appellant successfully completed the statutory prerequisites to earn a reduction of the status of his prior offense from a felony to a misdemeanor. Nor is it alleged that aggravated assault involves either the dishonesty or the false statement which would make the conviction admissible as a misdemeanor under Minn.R.Evid. 609(a)(2).

To allow impeachment of appellant with his prior conviction refuses to recognize the statutory reduction of his conviction from felony to misdemeanor status. It also imposes on appellant in this case the consequences of a prior felony despite a decision by the trial judge in the original case to treat the offense otherwise. Assuming the original trial judge had a reason for the lenient treatment in the first instance, we now frustrate that rationale by ignoring the mitigation built in to the original sentence.

The majority faults appellant's argument by noting that the record does not contain formal notice or recognition of appellant's rehabilitation. This is overly formalistic. Lack of official recognition of rehabilitation should not preclude reducing offense status where the party involved has met all of the statutory requirements for such a reduction and essentially achieved a "de facto" rehabilitation. Also, the majority's analogy to *State v. Clipper*, 429 N.W.2d 698, 700–01 (Minn.Ct.App.1988) does not appear determinative. In *Clipper* the question of applying Minn.Stat. § 609.13 is specific to the Sentencing Guidelines which require assignment of "one [criminal history] point for every felony conviction \* \* \* for which a stay of imposition of sentence

was given before the current sentencing." Minnesota Sentencing Guidelines II.B.1. No such parallel directive explicitly referring to a stay of imposition is present in Minn.R.Evid. 609. As such the analogy to *Clipper* is not absolute.

My concern on this issue centers on the majority's presumption that Minn.Rule Evid. 609 and its direction to the court to look to the status of the conviction as of the date of the conviction governs over Minn.Stat. § 609.13, subd. 1(2) and its felony reduction instructions. I submit that the statute takes precedent over the rule and should be given effect before the court makes impeachment decisions under rule 609. This would avoid misleading future defendants not aware that a plea to a "misdemeanor" with a stayed sentence may have future effects much harsher than those traditionally associated with a "misdemeanor."

II.

Also, allowing impeachment of appellant with his prior conviction leaves me with misgivings about the potential for prejudice, the age of the conviction, and the use of the cautionary instruction. All are troubling.

Despite the ten year time limit on admission of prior convictions articulated by Minn.R.Evid. 609(b), and also recognizing the breadth of the trial court's discretion in making evidentiary rulings, the use of a nine year old conviction for aggravated assault in the present case is still disconcerting. Initially, the conviction is quite old. This does not militate for its use at trial. Secondly, given the similarity of aggravated assault and the making of terroristic threats, allowing the use of the prior conviction in this case could have produced substantial prejudice against appellant, and it is not at all obvious that such prejudice was outweighed by the probative value of the prior conviction. As already observed, aggravated assault has little to do with veracity.

Lastly, case law assumes that prejudice problems can be remedied by an appropriate cautionary instruction telling the jury not to consider something deemed inappropriate. To have such prejudice pointed out to the jury by counsel at the time of the objection, highlighted by the court in a cautionary instruction, and perhaps, in the case of a cautious judge, reiterated just before the jury retires, certainly does nothing to mitigate, and probably aggravates by cumulative effect, a defendant's already undesirable position. Because of both the quality and quantity of other evidence already on the record implicating defendant in the events of July 3, 1987, the argument for admission of appellant's prior conviction for aggravated assault appears far from convincing.