**In the Matter of the Disciplinary Hearing Regarding the Peace Officer License of Stephen Joseph WOOLLETT a/k/a Stephen Joseph Engles.**

**No. C1–94–1295.**

Supreme Court of Minnesota.

Dec. 22, 1995.

■■■■■■■■■■■

Hubert H. Humphrey, III, Attorney General, Jacquelyn Albright, Assistant Attorney General, St. Paul, for appellant.

Harry D. Hohman, Appleton, for respondent.

## OPINION

KEITH, Chief Justice.

Appellant, the Minnesota Board of Peace Officer Standards and Training ("the Board"), appeals from a court of appeals decision ordering the Board to license respondent, Stephen Joseph Woollett, as a Minnesota peace officer. *In the Matter of the Disciplinary Hearing Regarding the Peace Officer License of Stephen Joseph Woollett a/k/a Stephen Joseph Engles,* 527 N.W.2d 569 (Minn.App.1995). The Board voted unanimously to revoke Woollett's peace officer license eligibility due to Woollett's 1981 felony conviction of third-degree assault, which violated the Board's administrative rules, Minn.R. 6700.0601, subp. 1(G) and 6700.0100, subp. 21 (1993). Woollett appealed the Board's decision, claiming that his felony conviction had reverted to a misdemeanor under Minn.Stat. § 609.13, subd. 1(2) (1994) after he successfully completed his 6-month term of probation. The court of appeals subsequently held in Woollett's favor. We reverse.

Stephen Joseph Woollett was born in 1958, married Diane Engles in 1979, and changed his last name to Engles at that time. On March 20, 1981, Woollett, then known as Stephen Engles, appeared before District Court Judge Paul Hoffman in Benton County and pleaded guilty to a felony charge of third-degree assault. The charge resulted from a 1980 incident in which he assaulted a

5–year–old girl at a party in the girl's residence. The complaint against Woollett alleged that he slapped the child to stop her from crying, and when the crying continued, he grabbed her leg and forcefully twisted it. The child's mother took her to the St. Cloud Hospital, where she was diagnosed with facial contusions and a fractured right femur. Woollett later admitted to a Benton County deputy sheriff that he had injured the girl, and he was charged with third-degree assault under Minn.Stat. § 609.223 (1980), punishable at that time by up to three years of imprisonment and a $3,000 fine.

At Woollett's sentencing hearing, Judge Hoffman accepted Woollett's plea and stayed the imposition of sentence on his felony conviction for a period of up to three years. Instead of imposing a prison sentence, Judge Hoffman placed Woollett on probation. Woollett asked the judge about the effect of his stayed sentence. Judge Hoffman responded:

> I have not imposed sentence. I have stayed the—staying the imposition of sentence means that you have not been sentenced. You can truthfully say in regard to this charge you have not been sentenced for a felony. If things go well, you will be discharged. It will be treated as a misdemeanor. If things don't go well, I may * * * bring you back in here and after hearing you, give you three years in prison.

Woollett then commented to Judge Hoffman, "I am in law enforcement right now." Judge Hoffman explained: "Well, this is exactly what you want then because it's not going to be on your record—or it's handled the best way we could for you." Judge Hoffman apparently intended to invoke Minn.Stat. § 609.13, subd. 1 (1971), which provided: "Notwithstanding a conviction is for a felony: (1) * * * (2) The conviction is deemed to be for a misdemeanor if the imposition of the sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a sentence." [1]

---

1. This statute exists in substantially the same form today. *See* Minn.Stat. § 609.13, subd. 1 (1994).

Woollett completed his probation requirements, and was discharged in September 1981. In 1984, he and his wife divorced, and Woollett changed his last name from Engles back to Woollett. In the fall of 1985, he enrolled in a 2–year law enforcement training course at Hibbing Area Vocational–Technical Institute. After completing his degree, Woollett moved to Arizona and applied for a position as a deputy sheriff. The sheriff's office in Arizona denied his application after discovering Woollett's felony conviction through a fingerprint check, and Woollett returned to Minnesota.

After his return to Minnesota, Woollett obtained a bachelor's degree in criminal justice from Bemidji State University, graduating in May 1992. He then completed the skills portion of his law enforcement training and applied to the Board for a peace officer license. Also in May 1992, Woollett sought a job at Prairie Correctional Facility in Appleton, Minnesota. At the request of the correctional facility, the Bureau of Criminal Apprehension conducted a criminal history check for "Stephen Joseph Woollett" and found no criminal record. The Board notified Woollett by letter on June 25, 1992 of his successful completion of its examination and licensing requirements. When Prairie Correctional Facility requested a copy of Woollett's license, the Board completed another background check. This time Woollett's felony conviction was discovered. Accordingly, the Board initiated disciplinary proceedings against Woollett, and held an informal hearing on the issue before its Investigation Committee on March 30, 1993. Woollett and his attorney contacted Judge Hoffman, who wrote a letter to the Board in support of Woollett's argument that his felony conviction was actually a misdemeanor.

The Board requested an administrative hearing, which took place on January 20, 1994. After the hearing, the administrative law judge issued a written report recommending that the Board grant Woollett's license. In his memorandum, the administrative law judge expressed his opinion that Judge Hoffman's intent was clear regarding Woollett's conviction, and that Minn.Stat. § 609.13, subd. 1(2) governed Woollett's situation. Notwithstanding the recommendation, the Board voted unanimously on May 20, 1994 to revoke Woollett's eligibility for a peace officer license, citing his 1981 felony conviction as a violation of Minn.R. 6700.0601, subp. 1(G) (1993).

Woollett appealed the Board's decision to the court of appeals, which ordered the Board to reinstate Woollett's eligibility. The court determined that Woollett's felony conviction became a misdemeanor under section 609.13 once Woollett was discharged from probation without a prison sentence, and therefore his judgment of conviction could not be used by the Board to deny Woollett's licensure under the Board's administrative rules. Furthermore, the court noted that although section 609.13 did not explicitly state that it applied to peace officer license applicants, this did not bar its use in Woollett's case. 527 N.W.2d at 572.

The Board challenges the court of appeals' determination that its administrative rules conflict with Minn.Stat. § 609.13, subd. 1. This statute provides that a felony conviction "is deemed to be for a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence." Minn.Stat. § 609.13, subd. 1(2) (1994). The Advisory Committee Comment illuminates the purpose of this statute:

> It is believed desirable not to impose the consequences of a felony if the judge decides that the punishment to be imposed will be no more than that provided for misdemeanors or gross misdemeanors.

See Minn.Stat. § 609.13, subd. 1 advisory committee cmt., *reprinted in* Minn.Stat.Ann. § 609.13 (West 1987). The court of appeals held that the Board could not deny Woollett's peace officer license under its administrative rules because Woollett's felony conviction met the requirements of section 609.13 and was therefore deemed to be a misdemeanor. Applying the legal maxim that an "administrative agency may not adopt a rule that conflicts with a statute," the court of appeals ordered the Board to reinstate Woollett's eligibility. 527 N.W.2d at 571, 573 (quoting *J.C. Penney Co. v. Commissioner of Eco-*

*nomic Sec.*, 353 N.W.2d 243, 247 (Minn.App. 1984)).

The Board is authorized by Minn.Stat. §§ 626.84–.855 (1994) to regulate the selection, training and licensing of peace officers in Minnesota. *See* Minn.R. 6700.0200 (1994). Accordingly, the Board has devised and published a number of administrative rules governing the training and licensing of peace officers. *See* Minn.R. ch. 6700 (1994). The Board is specifically required to adopt rules establishing "[m]inimum standards of physical, mental, and educational fitness which shall govern the recruitment and licensing of peace officers within the state." Minn.Stat. § 626.843, subd. 1(d) (1994). Pursuant to this legislative grant of authority, the Board has set forth several grounds for the denial of a license to an applicant. "[H]aving been convicted of a felony in any state or federal jurisdiction" is one ground for denial of licensure. Minn.R. 6700.0601, subp. 1(G) (1994). The phrase "conviction of a felony" is further defined as "a person [who] has been charged with a crime punishable by more than one year and * * * the person was convicted of that crime regardless of a stay of imposition or stay of execution." Minn.R. 6700.0100, subp. 21 (1993).[2]

■■■ Accordingly, the Board argues that it acted within its statutory authority when it established rules prohibiting convicted felons from becoming licensed peace officers, even when the felony conviction is subsequently deemed a misdemeanor. We agree. The Board's rules prohibit any person who has been convicted of a felony from acquiring a peace officer license. Therefore, because Woollett was "convicted of a felony" in 1981

in violation of Rule 6700.0601, subp. 1(G), he cannot become a licensed peace officer. The fact that he was sentenced for a misdemeanor does not alter the fact that his conduct, which seriously injured a 5–year–old girl, warranted a felony conviction. To protect the public from unqualified law enforcement officers and to maintain confidence in Minnesota's peace officer licensing system, we hold that the Board has the authority to enact a blanket prohibition against the licensing of applicants who have been convicted of a felony. And under the rules applicable in Woollett's case, a stay of imposition or stay of execution of his sentence does not change the fact that Woollett was convicted of a felony.

Woollett asserts that Judge Hoffman's commentary regarding the nature of his sentence reveals the judge's intent not to impose the consequences of a felony. Although Judge Hoffman may have thought that a stayed felony sentence would permit Woollett to pursue a law enforcement career, he merely informed Woollett that "you have not been *sentenced* for a felony." (emphasis added). If Woollett was under the impression that he had not been *convicted* of a felony, this was not the case. The record reflects that a felony conviction for third-degree assault was entered against Woollett, then known as Stephen Engles, on March 20, 1981. Thus, his felony conviction provided sufficient grounds to revoke his licensure eligibility under the Board's rules.

Prior decisions by this court and the court of appeals have established that section 609.13 does not require that a felony conviction with a stayed sentence be treated as a misdemeanor for all purposes.[3] In *State v.*

---

**2.** Rule 6700.0100 was revised by the Board in 1994, and "conviction" is now defined as "a person has been charged with a crime and the person was found guilty of that crime, regardless of length of or imposition or execution of any sentence received, any deferred finding of guilt or imposition of sentence by the court, any continuance for dismissal granted by the court, or any expungement of the offense records or conviction." Minn.R. 6700.0100, subp. 9a (Supp. 1994). However, the parties agree that the revised rule does not apply to Woollett's current application.

**3.** This is unlike the California statute after which section 609.13 was patterned. The Advisory

Committee Comment to section 609.13 states that the statute was modeled after "the California law which has worked successfully." *See* Minn. Stat.Ann. § 609.13 (West 1987). While California law is not binding on this court, a comparison of the two statutes is instructive. Section 17(b) of the California Penal Code provides that a crime punishable by either imprisonment in the state prison or the county jail "is a misdemeanor for all purposes" if the court imposes punishment other than a state prison term, or "grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor." Cal.Penal

*Moon*, for example, we held that a mandatory firearms restriction following the defendant's discharge from probation was properly imposed, despite the effect of section 609.13 upon the defendant's felony conviction. 463 N.W.2d 517, 519 (Minn.1990). In *Moon*, the defendant was ordered to comply with a statute which prohibited the shipment, transportation, possession or receipt of a firearm by persons convicted of a "crime of violence" for a period of ten years after discharge from probation or parole. Minn.Stat. § 609.165 (1990). Moon claimed that because his felony theft conviction was deemed a misdemeanor after his successful completion of a probationary term, he had not been convicted of a "crime of violence" under the statute, and therefore need not comply with the firearms restriction. *Id.* at 518. *See* Minn.Stat. § 624.712, subd. 5 (1990). We disagreed with Moon, and determined that the legislature intended to apply the firearms restriction based upon the nature of the offense committed by the defendant, rather than the actual sentence imposed by the trial court. *Id.* at 519.

Similarly, the court of appeals has upheld the use of felony convictions where sentencing was stayed under section 609.13 for the purposes of computing criminal history scores under Minnesota Sentencing Guidelines II.B.1, and impeaching the defendant at trial under Minn.R.Evid. 609(c). *State v. Clipper*, 429 N.W.2d 698, 701 (Minn.App. 1988); *State v. Skramstad*, 433 N.W.2d 449, 452–53 n. 1 (Minn.App.1988). Like the Board's rules, the provisions of the Sentencing Guidelines and the Rules of Evidence at issue in *Clipper* and *Skramstad* specifically addressed the treatment of felony convictions with stayed sentences in subsequent criminal prosecutions. *Clipper*, 429 N.W.2d at 701; *Skramstad*, 433 N.W.2d at 452 & n. 1. These provisions required that the offender would be impeached on the witness stand and sentenced commensurate with the nature of his or her previous conduct, rather than the type of sentence ultimately imposed. Furthermore, the defendants in *Clipper* and *Skramstad* did not establish that the statutes or rules at issue in each case were beyond any statutory authority granted to the relevant agency or rule-making body. Accordingly, the convictions were properly treated as felonies, rather than misdemeanors.

This analysis is applicable to Woollett's dispute with the Board. Section 609.13 does not require felony convictions where guilt is adjudicated, but sentencing is stayed, to be treated as misdemeanors in every conceivable situation. We are mindful of the court of appeals' observation that section 609.13 does not expressly restrict its application to any particular situation, and are aware that the cases discussed above have diminished its effect. In addition, we agree that the rehabilitation of criminal offenders and the minimization of barriers to their reemployment is an important goal. However, in light of the serious nature of Woollett's criminal offense, we feel that the Board should be permitted to bar him, or any other applicant with a felony conviction, from becoming a peace officer. Furthermore, Woollett's argument that the statute and the Board's rules conflict, and that we should therefore prohibit enforcement of the Board's rules, is not persuasive in light of *Moon*, *Clipper* and *Skramstad*.

The Board serves a unique function in regulating the licensing and training of all peace officers in Minnesota. We note that the Board receives special treatment from the legislature in the form of an express exemption from the policy and provisions of the Criminal Offenders Rehabilitation Act which prohibits the disqualification of applicants from public employment on the basis of

Code § 17(b)(1) and (b)(3) (West Supp.1995). Upon a request by California's Commission on Peace Officer Standards and Training, the California Attorney General recently issued an opinion as to the effect of section 17(b) on the Commission's licensing of peace officers. 76 Op. Cal. Att'y Gen. 270 (1993). The Attorney General opined that the Commission's power to revoke a peace officer license when an officer is convicted of a felony did not extend to convictions under section 17(b) which are to be treated as misdemeanors "for all purposes" unless the conduct itself involved moral turpitude or some other indication of the applicant's unfitness to be a peace officer. *Id.* at 275. Thus, while a blanket prohibition would be inappropriate in light of the purposes of section 17(b), case-by-case analysis of an applicant's conduct would permit denial of licensure by the California Commission on an individual basis.

a prior criminal conviction. *See* Minn.Stat. ch. 364 (1994). The Board and other law enforcement agencies are excused from compliance with the Act's purpose of encouraging the employment of criminal offenders. Minn. Stat. § 364.09 (1994). In light of the important public interests involved in this case, the Board's enforcement of minimum standards for the recruitment and licensing of qualified peace officers outweighs Woollett's desire to pursue a career in public law enforcement. Therefore, we reverse the decision of the court of appeals and uphold the Board's revocation of Woollett's license eligibility.

Reversed.