STATE of Minnesota, Respondent,

v.

S.A.M., Appellant.

A15-0950

Supreme Court of Minnesota.

Filed: March 15, 2017

David L. Liebow, Restovich Braun & Associates, Rochester, Minnesota, for appellant.

Cathryn Middlebrook, Chief Appellate Public Defender, William Ward, State Public Defender, Saint Paul, Minnesota, for amicus curiae Minnesota Board of Public Defense.

Joshua Esmay, Minneapolis, Minnesota, for amicus curiae Council on Crime and Justice.

Daniel J. Koewler, Ramsay Law Firm, P.L.L.C., Roseville, Minnesota, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

Yaima Couso, Minneapolis, Minnesota, for amicus curiae Volunteer Lawyers Network.

## OPINION

ANDERSON, Justice.

In 2005, appellant S.A.M. pleaded guilty to second-degree burglary, a felony offense. The district court stayed imposition of the sentence, and when S.A.M. was released from probation the conviction was deemed a misdemeanor under Minn. Stat. § 609.13, subd. 1(2) (2016). S.A.M. filed a petition for expungement in January 2015. The district court denied S.A.M.'s petition and the court of appeals affirmed. Because we conclude that felony convictions later deemed misdemeanors by operation of law under Minn. Stat. § 609.13, subd. 1(2), are not eligible for expungement under Minn. Stat. § 609A.02, subd. 3(a)(3) (2016), we affirm.

I.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and Mark A. Ostrem, Olmsted County Attorney, James P. Spencer, Senior Assistant County Attorney, Rochester, Minnesota, for respondent.

On the night of December 5, 2003, S.A.M. and two other people were involved in a burglary of a home-based motocross supply business. S.A.M. claimed that he drove the two co-defendants to the area

and waited in the car until they returned with a large bag of stolen goods. His co-defendants told a different story; they stated that S.A.M. wanted to steal a motorcycle, used a credit card to open the door, and entered the building with them.

S.A.M. eventually pleaded guilty to second-degree burglary, a felony offense. Minn. Stat. § 609.582, subd. 2(a) (2006). Because S.A.M.'s criminal history score was zero, the district court stayed imposition of his sentence and ordered probation for up to 10 years. Less than 3 years later, S.A.M. was discharged from probation because he had completed all court-ordered conditions of probation, including that he remain law-abiding. As a result of the stay of imposition and S.A.M.'s compliance with the terms of probation, S.A.M.'s felony conviction was deemed a misdemeanor under Minn. Stat. § 609.13, subd. 1(2).

In January 2015, S.A.M. filed a petition for expungement under Minn. Stat. § 609A.02, subd. 3(a)(3). In support of his petition, S.A.M. stated that he had obtained a bachelor's degree, purchased a house, stopped drinking alcohol, taken responsibility for raising his 8-year-old son, and ceased associating with his co-defendants. The Bureau of Criminal Apprehension, Rochester City Attorney, Rochester Police Department, and Olmsted County Attorney all objected to the expungement petition, arguing that S.A.M.'s felony burglary conviction cannot be expunged under Minn. Stat. § 609A.02, subd. 3(a)(3), because that provision allows the expungement of only misdemeanors. They also argued that S.A.M.'s conviction cannot be expunged under Minn. Stat. § 609A.02, subd. 3(a)(5) (2016), which provides for expungement of certain enumerated felonies, because burglary is not included in the list of felonies that are eligible for expungement.

The district court denied the expungement petition, concluding that S.A.M. was not "convicted of" a misdemeanor and therefore could not petition for expungement under Minn. Stat. § 609A.02, subd. 3(a)(3). The court of appeals affirmed. *State v. S.A.M.*, 877 N.W.2d 205 (Minn. App. 2016). We granted review to determine whether a felony conviction that is deemed a misdemeanor by operation of law under Minn. Stat. § 609.13, subd. 1(2), can be expunged under Minn. Stat. § 609A.02, subd. 3(a)(3). Because we conclude that such convictions cannot be expunged under this provision, we affirm.

## II.

This case presents a question of statutory interpretation. Statutory interpretation is a question of law, which we review de novo. *LaMont v. Indep. Sch. Dist. No. 728*, 814 N.W.2d 14, 18 (Minn. 2012). The goal of all statutory interpretation is to ascertain and effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2016). We construe words and phrases in a statute according to their plain and ordinary meaning. *Allan v. R.D. Offutt Co.*, 869 N.W.2d 31, 33 (Minn. 2015). We interpret a statute as a whole to give effect to all of its provisions. *In re Welfare of J.J.P.*, 831 N.W.2d 260, 264 (Minn. 2013). We may also consider the structure of the statute in determining its meaning. *See State v. Wenthe*, 865 N.W.2d 293, 303 (Minn.), *cert. denied*, —— U.S. ——, 136 S.Ct. 595, 193 L.Ed.2d 471 (2015).

This case requires us to interpret the expungement statute, Minn. Stat. § 609A.02, subd. 3 (2016). There are two expungement provisions in section 609A.02, subdivision 3 that are relevant to S.A.M.'s appeal. The first, subdivision 3(a)(3), allows a person to petition for expungement when the person "was convicted of or received a stayed sentence for a

petty misdemeanor or misdemeanor and has not been convicted of a new crime for at least two years since discharge of the sentence for the crime." *Id.*, subd. 3(a)(3). The second is subdivision 3(a)(5), which allows a person to seek expungement when the person "was convicted of or received a stayed sentence for a felony violation of an offense listed in paragraph (b), and has not been convicted of a new crime for at least five years since discharge of the sentence for the crime." *Id.*, subd. 3(a)(5). Because burglary is not one of the felonies "listed in paragraph (b)," S.A.M. cannot petition for expungement under subdivision 3(a)(5).

But S.A.M. argues that he can petition for expungement under Minn. Stat. § 609A.02, subd. 3(a)(3), because his felony conviction was deemed a misdemeanor under Minn. Stat. § 609.13, subd. 1(2). That statute states: "Notwithstanding a conviction is for a felony: ... the conviction is deemed to be for a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence." *Id.* S.A.M. argues that because he now has a misdemeanor conviction, rather than a felony conviction, on his criminal record, he may petition for expungement under section 609A.02, subdivision 3(a)(3), as though he had been *originally* convicted of a misdemeanor. We disagree.

We first note that we have previously interpreted section 609.13, subdivision 1(2), and these prior cases guide us here. For example, in *In re Peace Officer License of Woollett*, 540 N.W.2d 829 (Minn. 1995), we considered whether the Board of Peace Officer Standards and Training (the "POST Board" or "Board") properly revoked Woollett's peace officer license. The POST Board determined that, under the Board's administrative rules, Woollett's 11-year-old conviction of third-degree assault

was a disqualifying felony. *Id.* at 831 (citing Minn. R. 6700.0601, subp. 1(G) (1993) (stating that "having been convicted of a felony in any state or federal jurisdiction" shall be grounds to deny eligibility for a license)). Woollett challenged the revocation in the court of appeals, which reversed the Board's determination, holding that Woollett's conviction became a misdemeanor under section 609.13 once Woollett was discharged from probation without a prison sentence. *Id.* We reversed the court of appeals, concluding that "[s]ection 609.13 does not require felony convictions where guilt is adjudicated, but sentencing is stayed, to be treated as misdemeanors in every conceivable situation." *Id.* at 833. We found two factors determinative. First, we noted that even if Woollett had not been *sentenced* for a felony, he had indeed been "*convicted* of a felony." *Id.* at 832. Second, we noted that the phrase "conviction of a felony" as used in the POST Board regulation at issue covered a person who was charged with, and convicted of, a crime punishable by more than one year " 'regardless of a stay of imposition or stay of execution.' " *Id.* (quoting Minn. R. 6700.0100, subp. 21 (1993)).

In *State v. Anderson*, we were asked to decide whether a felony burglary conviction that is later deemed a misdemeanor under section 609.13 is a "crime of violence" within the meaning of Minn. Stat. § 624.712, subd. 5 (2008). 733 N.W.2d 128, 134 (Minn. 2007). Anderson pleaded guilty to felony second-degree burglary in 1995, and after he successfully completed probation, the conviction was deemed a misdemeanor under section 609.13. *Id.* at 131. Several years later, Anderson was convicted of violating Minn. Stat. § 609.165, subd. 1b(a) (2016), which prohibits the possession of a firearm by "[a]ny person who has been convicted of a crime of violence, as defined in section 624.712, subdivision 5." Section 624.712, subdivision 5, defines

"crime of violence" to include "felony convictions" of first- or second-degree burglary. We affirmed Anderson's conviction, rejecting his contention that, under section 609.13, upon his discharge from probation, "he was a person who has been convicted of a misdemeanor," not a felony. *Anderson*, 733 N.W.2d at 135-36. Relying on our decision in *State v. Moon*, 463 N.W.2d 517 (Minn. 1990), we stated that, when determining whether a prior offense is a "crime of violence," a court must consider the elements of the offense, not "its subsequent disposition." *Anderson*, 733 N.W.2d at 136. Anderson, we said, "has been convicted" of felony second-degree burglary, and even if the conviction was later deemed a misdemeanor, " 'that does not change his underlying conviction for the purposes of the [firearm prohibition] statute.' " *Id.* (citation omitted) (brackets in original).

Most recently, in *State v. Franklin*, we considered whether a felony conviction that has been deemed a misdemeanor under section 609.13 can be considered when determining whether an offender "has five or more prior felony convictions" under the career-offender statute, Minn. Stat. § 609.1095, subd. 4 (2016). 861 N.W.2d 67, 68 (Minn. 2015). We agreed with Franklin that the Legislature's use of "the present-tense verb 'has' in section 609.1095, subdivision 4, requires the district court to consider how many felony convictions a defendant possesses when the sentencing occurs." *Id.* at 69. From the plain language of section 609.1095, subdivision 4, we concluded that, because Franklin's felony conviction was deemed a misdemean-

or, he no longer "has" a felony conviction. *Id.* at 70. We distinguished *Anderson* and *Woollett* because "the statutory language at issue in each of those cases [was] different than the [present tense] statutory language at issue [in Franklin]." *Id.* at 70 n.1.

Here, S.A.M. argues that the phrase "was convicted" in Minn. Stat. § 609A.02, subd. 3(a)(3), is more similar to "has ... convictions" in *Franklin*, than it is to "having been convicted" in *Woollett* and "has been convicted" in *Anderson*. Therefore, he argues, we should follow *Franklin* and look to the current status of his conviction rather than its original classification. *See* 861 N.W.2d at 70. Because S.A.M.'s conviction is currently a misdemeanor, this analysis would allow him to petition for expungement under subdivision 3(a)(3).

S.A.M.'s argument is unpersuasive. First, by using the phrase "was convicted," the plain text of the statute instructs us to analyze S.A.M.'s conviction at the time he "was convicted"—that is, at the time of conviction. Minn. Stat. § 609A.02, subd. 3(a)(3). Nothing in the statute suggests that any other time is relevant.[1]

In addition, "was convicted," at issue here, is more similar to "has been convicted," in *Anderson*, than it is to "has ... convictions," in *Franklin*. Both "was convicted" and "has been convicted" refer to the past. The only reason we looked to the present status of the conviction in *Franklin* is because "has ... convictions," based on verb tense, refers to the present. 861 N.W.2d at 70. Therefore, contrary to S.A.M.'s assertion, our case law suggests

---

1. Because "was convicted" unambiguously refers to the date on which S.A.M. was convicted, there is only one reasonable interpretation of the statute and we need not resort to any of the canons of statutory construction or sources of legislative intent cited by the dissent. *City of Brainerd v. Brainerd Invs. P'ship,*

827 N.W.2d 752, 755 (Minn. 2013) ("When legislative intent is clear from the statute's plain and unambiguous language, we interpret the statute according to its plain meaning without resorting to other principles of statutory interpretation.").

that section 609.13, subdivision 1(2), does not allow S.A.M. to petition for expungement under section 609A.02, subdivision 3(a)(3).

The structure of section 609A.02 also supports this interpretation. The statute arranges crimes by clauses in order from least serious to most serious. Minn. Stat. § 609A.02, subd. 3(a)(1)-(5). It begins in subdivision 3(a)(1) with proceedings that "were resolved in favor of the petitioner" and continues in increasing severity all the way to felonies, which are dealt with in subdivision 3(a)(5). *Id.* The length of time that a petitioner must remain law-abiding before seeking an expungement also increases by clause as the severity of the offense increases. *Id.* This structure shows that the Legislature intentionally made it increasingly more difficult for an individual to receive an expungement for more serious crimes.

S.A.M.'s interpretation would upset this structure. Under his interpretation, an individual who was convicted of, and received a stay of imposition for, a felony not listed in section 609A.02, subdivision 3(b), could receive an expungement under subdivision 3(a)(3) earlier than an individual who was convicted of an enumerated felony, which can be expunged under subdivision 3(a)(5). The Legislature could not have intended such an anomalous result. The enumerated felonies, which are listed in subdivision 3(b), are generally less serious felonies and certainly less serious than burglary, the felony offense for which S.A.M. was convicted. *See* Minn. Stat.

§ 609A.02, subd. 3(b). The statute requires a longer waiting period for enumerated felonies than for gross misdemeanors and a longer waiting period for gross misdemeanors than for misdemeanors. *See id.*, subd. 3(a). The Legislature could not have intended that non-enumerated felonies could have the same waiting period as misdemeanors and, consequently, be eligible for expungement earlier than less serious enumerated felonies and gross misdemeanors.[2]

S.A.M.'s interpretation also upsets the structure of section 609A.02 by creating substantial overlap between subdivisions 3(a)(3) and 3(a)(5). Although S.A.M. argues that he "was convicted" of a misdemeanor under subdivision 3(a)(3), he also concedes that he "was convicted" of a felony. Therefore, under S.A.M.'s interpretation, a person who was convicted of an enumerated felony whose conviction was later deemed a misdemeanor can petition for expungement under either subdivision 3(a)(3) or subdivision 3(a)(5). Presumably, all similarly situated persons would choose to petition for expungement under subdivision 3(a)(3) because it contains a shorter waiting period. This result reduces the effectiveness of subdivision 3(a)(5), which clearly contemplates that enumerated felonies should be expunged under that provision. Nothing in the statute suggests that a person should be able to choose the clause under which he or she petitions for expungement. Therefore, S.A.M.'s interpretation conflicts with the structure of the statute, which clearly organizes crimes into

2. The dissent argues that we should not be concerned about upsetting the structure of the expungement statute because subdivisions (3)(a)(3) and (3)(a)(5) provide only "doorways" to expungement. After a petitioner enters a "doorway," the dissent explains, the court must still consider the nature and severity of the underlying crime before granting the expungement. *See* Minn. Stat. § 609A.03, subd. 5 (2016). But this observation misses the mark. The structure of the expungement statute shows that the Legislature made it more difficult for petitioners convicted of serious offenses to *both* get through a "doorway" *and* obtain an expungement once the doorway is opened. The dissent's interpretation upsets the legislative structure.

clauses in order of severity, provides longer waiting periods for expungement of more serious crimes, and requires a person to petition for expungement under the clause that addresses the crime for which the person was convicted.

## III.

■ We conclude that a felony conviction that has been deemed a misdemeanor by Minn. Stat. § 609.13, subd. 1(2), is not eligible for expungement under Minn. Stat. § 609A.02, subd. 3(a)(3).

Affirmed.

## DISSENT

LILLEHAUG, Justice (dissenting).

More than a decade ago, S.A.M. was convicted of felony burglary, but a district court thought he could be rehabilitated. The court stayed imposition of sentence and put S.A.M. on probation, which S.A.M. successfully completed. As a result, by the plain words of Minnesota law, S.A.M.'s felony conviction "is deemed to be for a misdemeanor." Minn. Stat. § 609.13, subd. 1(2) (2016). Now a misdemeanant, S.A.M. seeks a chance to prove that he is truly rehabilitated and that his criminal records should be expunged. But today, the court holds that—unlike other misdemeanants—S.A.M. cannot enter the courthouse door. Respectfully, the court is wrong. Because the law, properly read, gives S.A.M. a chance to demonstrate why he deserves a fresh start, I dissent.

Ever since 1963, when Minnesota passed its modern criminal code, Minnesota law has treated certain felony convictions as misdemeanor convictions. Minnesota Statutes § 609.13, subd. 1 (2016), provides: "Notwithstanding a conviction is for a felony ... (2) the conviction is deemed to be for a misdemeanor if the imposition of the prison sentence is stayed, the defendant is placed on probation, and the defendant is thereafter discharged without a prison sentence."

The plain words of section 609.13, subdivision 1(2) (the "deemed" statute) apply to S.A.M. He was convicted of a felony (burglary), the district court stayed imposition of sentence, he successfully completed probation, and he was discharged without a prison sentence. As a matter of law, from the moment of discharge, his felony conviction "is deemed to be for a misdemeanor." *Id.* S.A.M. is a misdemeanant.

The expungement statute, chapter 609A, created multiple doorways for a convicted person to seek a court order sealing all records relating to an arrest, charge, trial, or verdict. *See* Minn. Stat. § 609A.02 (2016). Petitioners who may seek expungement include those: (1) whose cases have been resolved in their favor; (2) who have completed diversion or a stay of adjudication; (3) who were convicted of a petty misdemeanor or misdemeanor; (4) who were convicted of a gross misdemeanor; or (5) who were convicted of certain listed felonies. Minn. Stat. § 609A.02, subd. 3(a).

To be clear, these are only doorways—not destinations. Entry does not entitle one to expungement. To the contrary: expungement is an "extraordinary remedy to be granted only upon clear and convincing evidence that it would yield a benefit to the petitioner commensurate with the disadvantages to the public and public safety." Minn. Stat. § 609A.03, subd. 5(a) (2016). In determining whether the "extraordinary remedy" should be granted, a court must consider 11 factors. Among them are "the nature and severity of the underlying crime," "aggravating or mitigating factors relating to the underlying crime, including the petitioner's level of participation and context and circum-

stances of the underlying crime," and "the risk, if any, the petitioner poses to individuals or society." *Id.*, subd. 5(c) (2016).

With the framework of the expungement statute in mind, the question is whether a door is open to S.A.M. Specifically, is he a petitioner who "was convicted of or received a stayed sentence for a . . . misdemeanor and has not been convicted of a new crime for at least two years since discharge of the sentence for the crime"? Minn. Stat. § 609A.02, subd. 3(a)(3).

When we interpret statutes, our task is to ascertain and effectuate the intent of the Legislature. *Brayton v. Pawlenty*, 781 N.W.2d 357, 363 (Minn. 2010); *see* Minn. Stat. § 645.16 (2016). A statute is ambiguous when it is susceptible to more than one reasonable interpretation. *Staab v. Diocese of St. Cloud*, 813 N.W.2d 68, 72-73 (Minn. 2012). If a statute is ambiguous, we may look beyond the statute's text to ascertain the intent of the Legislature. *Marks v. Comm'r of Revenue*, 875 N.W.2d 321, 324 (Minn. 2016).

When section 609.13, subdivision 1 (the "deemed" statute), and section 609A.02, subdivision 3(a)(3) (the misdemeanor doorway), are read together, there are two reasonable interpretations. The first reasonable interpretation, adopted by the court, is that "was convicted" in the misdemeanor doorway refers to a particular time: the date of the original conviction, not a later time when, by operation of law, the conviction was "deemed" a misdemeanor. Under this interpretation, S.A.M. "was convicted" of a felony, not a misdemeanor, so he cannot enter the misdemeanor doorway. Nor can he enter the felony doorway, because burglary is not among the specified felonies for which the expungement remedy may be sought. Minn. Stat. § 609A.02, subd. 3(a)(5), (b).

But there is a second, reasonable interpretation that allows the two statutes to be read in harmony with one another. *See State ex rel. Interstate Air-Parts v. Minneapolis-St. Paul Metro. Airports Comm'n*, 223 Minn. 175, 25 N.W.2d 718, 724 (1947) ("Statutes relating to the same general subject matter are in pari materia and are to be construed together. . . ."). Under this interpretation, the words "was convicted" in the expungement statute are read through the lens of the "deemed" statute, which provides unequivocally that a felony conviction "is deemed to be for a misdemeanor" in these circumstances. Minn. Stat. § 609.13, subd. 1(2). The word "deem" means "[t]o hold; consider; adjudge; condemn; determine; treat as if; construe." *Deem, Black's Law Dictionary* (4th ed. 1951). The "deemed" statute requires that S.A.M.'s felony conviction be "considered" or "treated as if" it were a misdemeanor conviction. This interpretation focuses on the status of the conviction as of the time of the petition for expungement. At that time, S.A.M. could truthfully represent that his criminal record included a misdemeanor—not a felony—conviction. He "was convicted" of a misdemeanor.

Our case law does not tell us which reasonable interpretation is correct. The facts of this case reside in a gap between two lines of precedent. *State v. Anderson* concerned a statute that used the phrase "has been convicted" of a felony. 733 N.W.2d 128, 134 (Minn. 2007) (citing Minn. Stat. § 609.165, subd. 1b(a) (2016)). Similarly, *In re Peace Officer License of Woollett* involved a Peace Officer Standards and Training rule that used the phrase "having been convicted of a felony." 540 N.W.2d 829, 832 (Minn. 1995) (citing Minn. R. 6700.0601, subp. 1(G) (1993)). We held that, based on those particular phrases, the "deemed" language of section 609.13 did

not control.[1] *Anderson*, 733 N.W.2d at 136; *Woollett*, 540 N.W.2d at 832. By contrast, in *State v. Franklin*, interpreting a statute that used the phrase "has five or more felony convictions," we held that the "deemed" language of section 609.13 did control. 861 N.W.2d 67, 70 (Minn. 2015) (citing Minn. Stat. § 609.1095, subd. 4 (2016)).

Neither line of precedent is directly on point here. The phrases "has been convicted" and "having been convicted" suggest "convicted at any time." The phrase "has ... felony convictions" suggests "now" or "currently" convicted. But, in the expungement statute, the time period to which the word "was" refers—in the phrase "was convicted"—is less definite. Obviously, the word "was" refers to a time in the past, but the expungement statute does not direct us to a precise point in the past. Therefore, section 609A.02, subdivision 3(a)(3), is ambiguous as to time.

We have previously recognized that statutory ambiguity exists when a statute is unclear on the timing of an event or a condition. *See Marks*, 875 N.W.2d at 326 (noting that a lack of "temporal precision" created "temporal ambiguity" among statutory requirements); *Brayton*, 781 N.W.2d at 364 ("[T]he absence of any timing definition leaves [the statute] ambiguous . . . ."). This is such a statute.

When, as here, "the statute is susceptible to two reasonable interpretations, we must look beyond the text to determine legislative intent." *Marks*, 875 N.W.2d at 326. When we encounter statutory ambiguity, we turn to the canons of construction to determine which interpretation is more

reasonable. Applying those canons, I conclude that the second interpretation, which takes into account the transformation of the felony conviction into a misdemeanor conviction, is more consistent with legislative intent.

The Legislature has directed us to ascertain legislative intent by examining "the occasion and necessity for the law" and "the object to be attained" by the law. Minn. Stat. § 645.16(1), (4) (2016). In other words, we should consider the purpose of the statute. *Marks*, 875 N.W.2d at 326; *BCBSM, Inc. v. Comm'r of Revenue*, 663 N.W.2d 531, 533 (Minn. 2003).

The second interpretation is more consistent with the purpose of the "deemed" statute, the clearer and longer-standing of the two laws. The intent of section 609.13 is that, once the felon completes probation successfully and is discharged without a prison sentence, the felon becomes a misdemeanant. The drafters of section 609.13 were quite clear that is what they intended. The Advisory Committee on the Criminal Code of 1963 explained that, under circumstances such as these in which the offender is put on probation and discharged without sentence, "It is believed desirable not to impose the consequences of a felony. . . ." Minn. Stat. § 609.13 advisory committee cmt. (1963). The majority's interpretation imposes the consequences of a felony on what the Legislature has directed should be deemed a misdemeanor.

The second interpretation is also more consistent with the purpose of the expungement statute, which is to help offenders get a fresh start or a "second chance" by sealing their criminal records.[2]

---

1. In *Woollett*, there was an additional distinguishing factor. Regulations adopted under the peace officer licensing statute provided that they applied " 'regardless of a stay of imposition or stay of execution.' " 540

N.W.2d at 832 (quoting Minn. R. 6700.0100, subp. 21 (1993)).

2. "The sooner they get that second chance—if they've merited that on the balancing test that's in the statute—the sooner they can get

The statute's focus is on the petitioner's criminal records at the time of the petition. At the time of S.A.M.'s petition, his criminal record showed a misdemeanor, not a felony. So it would further the purpose of the expungement statute to allow S.A.M. to enter the misdemeanor door.

Another portion of the expungement statute, Minn. Stat. § 609A.02, subd. 3(a)(1), paints a reasonably sharp picture of the Legislature's temporal intent. That provision opens a door to expungement when "all pending actions or proceedings were resolved in favor of the petitioner." *Id.* This door is open for, among others, petitioners who were initially convicted, then later exonerated, whether by postconviction relief or otherwise. The phrasing suggests that a petitioner's eligibility for a doorway must be ascertained at the time of the petition, not at the time of the original conviction. By the majority's interpretation—which focuses on the moment of conviction, rather than on the time of the petition—someone who "was convicted" of a felony, but whose conviction was later reduced to a misdemeanor, would be ineligible. This cannot be what the Legislature intended.

As the court observes, under my interpretation, a misdemeanant like S.A.M. could receive relief more quickly under subdivision 3(a)(3), which requires a 2-year wait, than someone convicted of a felony less serious than burglary. The latter offender, still a felon, would have to proceed under subdivision 3(a)(5), which requires a 5-year wait to petition for expungement. This outcome is not illogical. My reading of subdivision 3(a)(3) would not open the door for all former felons, but only for someone like S.A.M., whose sentence was stayed and who successfully completed probation. Even then, under my interpretation, S.A.M. would still be required to demonstrate, clearly and convincingly with evidence, that he is worthy of the extraordinary remedy of expungement. By contrast, the court's reading of the expungement statute discriminates among misdemeanants and prevents some from proving their worthiness for expungement.

By shutting the door to expungement for people like S.A.M., the court reduces opportunities for rehabilitated offenders to become productive members of society.[3] Read properly, the law does not require this harsh result. I hope that the Legislature will clarify the expungement statute to reopen this door. Clarification would further what the Legislature has declared to be the state's official policy: "to encourage and contribute to the rehabilitation of criminal offenders and to assist them in the resumption of the responsibilities of citizenship." Minn. Stat. § 364.01 (2016).

CHUTICH, Justice (dissenting).

I join in the dissent of Justice Lillehaug.

MCKEIG, Justice (dissenting).

I join in the dissent of Justice Lillehaug.

---

back to being productive, taxpaying members of the community." Sen. debate on H.F. 2576, 88th Minn. Leg., Apr. 28, 2014 (video recording) (statement of Sen. Latz).

**3.** As the Rev. Dr. Martin Luther King, Jr., said in his Nobel Lecture: "[O]ut of the womb of a frail world new systems of justice and equality are being born. Doors of opportunity are gradually being opened to those at the bottom of society." Martin Luther King, Jr., Nobel Lecture: The Quest for Peace and Justice (Dec. 11, 1964), http://www.nobelprize.org/nobel_prizes/peace/laureates/1964/king-lecture.html (last visited Mar. 8, 2017).