*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1254
A15-1323**

Robert Anderson,
Respondent,

vs.

State of Minnesota,
Appellant.

**Filed April 25, 2016
Affirmed
Johnson, Judge**

Washington County District Court
File No. 82-CV-15-221

Lynne Torgerson, Minneapolis, Minnesota (for respondent)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Pete Orput, Washington County Attorney, Richard D. Hodsdon, Assistant County Attorney, Stillwater, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Johnson, Judge; and John P.

Smith, Judge.*

---

        *Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**JOHNSON**, Judge

Robert Anderson petitioned the district court for the restoration of his right to possess a firearm. The district court granted the petition. We affirm.

**FACTS**

Anderson's ineligibility to possess a firearm arose from two convictions of third-degree assault. The facts underlying those convictions are described below based on Anderson's petition. The state has not disputed Anderson's allegations concerning the underlying facts of his prior disqualifying convictions.

Anderson's first conviction, aiding and abetting third-degree assault, is based on an incident at a Perkins restaurant in 1992. A diner at a nearby table used a slur in reference to Anderson's mother. Anderson and a friend got into a physical altercation with the other diner. Anderson, who was 21 at the time, punched the other diner in the face. Anderson's friend beat the other diner more severely outside the restaurant. The victim of the assault sustained serious injuries. In 1994, after the state charged Anderson with several offenses, Anderson pleaded guilty to aiding and abetting third-degree assault, in violation of Minn. Stat. §§ 609.05, subd. 1, .223, subd. 1 (1992). The district court imposed a misdemeanor sentence of one year of probation. *See* Minn. Stat. § 609.13, subd. 1(1) (1992). Anderson successfully completed and was discharged from probation in 1995.

Anderson's second conviction of third-degree assault arose from a motor-vehicle accident in 2001. After a Fourth of July party, Anderson was driving several passengers home in his vehicle. One of the passengers grabbed the steering wheel, which led to a

physical struggle, which caused Anderson to drive off the road, causing injury to another passenger. The state charged Anderson with third-degree assault, in violation of Minn. Stat. § 609.223, subd. 1 (2000). In 2002, Anderson pleaded guilty. The district court stayed imposition of sentence and placed Anderson on probation for five years. Anderson successfully completed and was discharged from probation in 2007, and his conviction was deemed a misdemeanor. *See* Minn. Stat. § 609.13, subd. 1(2) (2000).

Because a state statute imposes a lifetime ban on the possession of a firearm for persons convicted of a crime of violence, *see* Minn. Stat. § 624.713, subd. 1(2) (2012); 2003 Minn. Laws ch. 28, art. 3, § 8 at 294-96 (applying lifetime ban to offenders discharged from sentence or court supervision after August 1, 1993), and because each of Anderson's prior convictions is considered a crime of violence for purposes of that statute, *see* Minn. Stat. § 624.712, subd. 5 (2012), Anderson was ineligible to possess a firearm. *See* Minn. Stat. § 624.713, subd. 1(2); *State v. Moon*, 463 N.W.2d 517, 520 (Minn. 1990); *see also* 18 U.S.C. § 922(g)(1) (2012) (barring persons convicted of crime punishable by more than one year from possessing firearms in or affecting interstate commerce).

In March 2014, Anderson petitioned the district court for the restoration of his right to possess a firearm. *See* Minn. Stat. § 609.165, subd. 1d (2012). In a memorandum accompanying the petition, Anderson argued that restoration would be appropriate because neither of his two assault convictions involved the use of a firearm, because he had successfully completed probation after each of his prior convictions, because he had not committed any additional crimes in the 11 years since his second assault conviction, and because he had made positive changes in his life. Anderson's petition noted that he would

3

like to use a firearm for hunting. The state filed a memorandum in which it opposed Anderson's petition. The state argued that restoration would be inappropriate because of Anderson's criminal history, including the two assault convictions and a felony DWI, because of the legislative intent that persons convicted of crimes of violence should be subject to a lifetime ban on the possession of firearms, and because a desire to hunt is an insufficient reason for restoration.

In May 2015, the district court conducted a hearing on Anderson's petition. Anderson testified that he successfully completed chemical-dependency treatment in the mid-2000s and had not committed any crime since his 2002 conviction. Anderson also testified that he had graduated from college and had been married and gainfully employed for approximately four years. Anderson further testified that he would like to hunt, do target-shooting, and possess a firearm for purposes of self-protection.

In August 2015, the district court issued a three-page order in which it granted Anderson's petition. The state appeals.

## D E C I S I O N

The state argues that the district court erred by granting Anderson's petition and restoring his right to possess a firearm.

A person who is ineligible to possess a firearm may petition a district court for restoration of the right. Minn. Stat. § 609.165, subd. 1d. The district court may restore the person's right to possess a firearm "if the person shows good cause to do so and the person has been released from physical confinement." *Id.* In this context, "good cause is a reason for taking an action that, in legal terms, is legally sufficient, and, in ordinary terms, is

4

justified in the context of surrounding circumstances." *Averbeck v. State*, 791 N.W.2d 559, 561 (Minn. App. 2010). Public safety is the primary consideration for a district court considering a petition for restoration. *Id.*

Whether a petitioner has shown good cause for restoration is a mixed question of law and fact. *Id.* at 560. This court applies a clear-error standard of review to a district court's factual findings concerning good cause and a *de novo* standard of review to a district court's legal analysis concerning good cause. *Id.* at 561. If a petitioner has shown good cause, a district court has discretion to grant or deny the petition, and this court applies an abuse-of-discretion standard of review to that discretionary decision. *Id.*

In this case, the district court found that Anderson had shown good cause for the restoration of his right to possess a firearm. The district court's finding of good cause is based on the district court's recitation of certain undisputed facts: neither of Anderson's disqualifying convictions involved the use of a firearm, he completed chemical-dependency treatment, he has not committed any crimes since completing treatment, he has been married for several years, he completed his college education and is gainfully employed, he is a homeowner, his other civil rights have been restored, and he wishes to hunt. On appeal, the state does not challenge these underlying facts, which are supported by the record. Rather, the state argues that the district court clearly erred by finding that there is good cause for the restoration of Anderson's right to possess a firearm. The state makes several specific contentions in support of its argument.

First, the state contends that Anderson's interest in hunting is not a valid reason for restoration or is not sufficiently weighty to justify restoration in this case. The state points

5

out that the petitioner in *Averbeck* wished to "go hunting with family and friends" but that this court ruled against him. *See id.* at 562. In *Averbeck*, the district court denied the petition for various reasons, and we affirmed the district court's decision. *Id.* at 561-62. We did not state in *Averbeck* that a desire to hunt is not a valid reason for restoration. *See id.* at 562. In fact, we did not expressly comment on the petitioner's interest in hunting. *See id.* Our affirmance in *Averbeck* can be explained by, among other things, the petitioner's interest in using a firearm for other purposes in other situations, which the district court described as "emotionally charged situations in which the presence of firearms could escalate risks in already dangerous circumstances," thereby threatening public safety. *Id.* at 562. No similar facts are present in this case. Thus, the district court in this case did not err by considering Anderson's interest in hunting to be a factor supporting the petition for restoration.

Second, the state contends that the district court erred by relying on evidence that Anderson had been married for three years, was a homeowner, and had completed college. Specifically, the state contends, "Having legal authority to possess a firearm has nothing to do with one's marital status, home ownership or education." The state cites no legal authority for this contention. Because the primary consideration on a petition for restoration is public safety, *see Averbeck*, 791 N.W.2d at 561, a petitioner's marital status, homeownership status, and educational attainment might be relevant to the inquiry, depending on the circumstances. A district court is in the best position to assess a petitioner's credibility and to assess the factors most relevant to the determination whether a person who previously committed a crime is a threat to public safety. *Cf. In re Civil*

6

*Commitment of Ince*, 847 N.W.2d 13, 23-24 (Minn. 2014). A district court is not precluded from considering whether success or stability in a petitioner's private life or employment might make the petitioner less likely to be a threat to public safety. Thus, the district court in this case did not err by considering Anderson's marriage, homeownership, and educational attainment to be factors supporting the petition for restoration.

Third, the state contends that the district court erred by relying on the fact that neither of Anderson's disqualifying convictions involved a firearm. The state contends that the district court's reasoning "unduly minimized the extremely serious nature of what those underlying offenses were." We do not agree with the state's characterization of the district court's reasoning. The district court's order identifies the disqualifying criminal offenses and acknowledges that those offenses impose a lifetime ban on the possession of a firearm, absent restoration. Common sense suggests that a person who previously used a firearm to commit a crime of violence may be more likely to threaten public safety after restoration than a person who previously committed a crime of violence without the use of a firearm. Again, a district court is in the best position to determine the pertinence and weight to be given such facts. *See id.* In any event, a district court is not precluded from considering whether a petitioner used a firearm in the commission of the crime of violence that led to ineligibility. Thus, the district court did not err by considering such facts in this case.

Fourth, the state contends that the district court erred by ignoring the "strong legislative intent against restoration of firearms." Again, we disagree with the state's characterization of the district court's reasoning. The district court's order recognizes both

7

the general rule of a lifetime ban on the possession of a firearm and also the exception of restoration of the right to possess a firearm in certain circumstances. The existence of the exception and the statutory process to petition for restoration implies that a person previously convicted of a crime of violence may be redeemed in certain circumstances. The district court considered factors relevant to the restoration determination. Thus, the district court did not contradict legislative intent by granting Anderson's petition.

Fifth, the state contends that the district court erred because the facts of this case are similar to the facts of *Averbeck*, in which the petitioner did not achieve the restoration of the right to possess a firearm. But *Averbeck* is distinguishable, primarily because it came to the court of appeals in a different procedural posture. In *Averbeck*, the district court denied the petition for restoration. *Id.* at 562. In this case, the district court granted the petition, and the state's appeal raises different issues. A deferential standard of review applies. *Id.* at 561. Furthermore, as noted above, the petitioner in *Averbeck* presented evidence and arguments that gave rise to a concern that, despite the passage of time, he would be a threat to public safety if he were permitted to possess a firearm. *Id.* at 561-62. Anderson's petition does not give rise to such a concern. Moreover, the state has not contradicted Anderson's evidence that he has matured, has successfully completed chemical-dependency treatment, and has changed his lifestyle. Thus, this court's opinion in *Averbeck* does not require us to reverse the district court's finding that good cause exists for the restoration of Anderson's right to possess a firearm.

As stated above, if a petitioner has shown good cause, a district court has discretion to grant or deny the petition. *Id.* at 561. The state does not argue that the district court

8

erred in exercising that discretion. Therefore, in light of our conclusion that the district court did not err in its good-cause finding, we conclude that the district court did not err by granting Anderson's petition.

**Affirmed.**